THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellee, v. J. W. GRAHAM, Defendant-Appellant.

Fifth District   No. 5—84—0127

Opinion filed January 29, 1985.

Robert M. Crain, of Crain, Cooksey, Veltman & Pursell, Ltd., of Centralia, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roy E. Frazier, Jr., Assistant Attorney General, of Springfield, and Paul D. Giamanco, Special Assistant Attorney General, of Mt. Vernon, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

This is an eminent domain proceeding, filed September 5, 1980, by petitioner Illinois Department of Transportation (hereinafter the Department) in the circuit court of Effingham County. Named defendants were the Petty Co., Inc., the Effingham County Committee on Aging, the First National Bank of Effingham, the American Oil Co., and J. W. Graham, only the latter of whom was involved in the trial and this appeal. After a jury trial, Graham's compensation was fixed at $51,800. Graham filed a written motion for a new trial. From the denial of said motion, Graham appeals. There is no cross-appeal.

The land in question is situated within the city of Effingham and was acquired by the Department for the widening and improvement of U.S. Route 40. As the case was submitted to the jury, Graham was entitled to be compensated for three distinct elements of damage: (1) for the land taken; (2) for damages to the untaken remainder of Graham's property; and (3) for the highway construction contractor's two-year use of an easement across the remainder of Graham's property. There was considerable dispute at trial as to whether the largest tractor-semitrailer rigs could be loaded and unloaded at the buildings on the remaining premises; however, it appears that access to the building was at least made substantially more difficult by the taking.

Four witnesses testified regarding their opinions as to the compensation to which Graham was entitled. Graham testified that in his opinion he was entitled to $50,000 for the land taken, $74,000 for damages to the remainder, and $6,000 for the contractor's temporary easement, for a total of $130,000. Edward Waddell, a real estate appraiser, testified for Graham that appropriate compensation for those three elements of damage would be $32,000, $108,000, and $5,000 respectively, for a total of $145,000. Mike Mitchell, for the Department, set compensation at $38,285, $6,915, and $1,000, for a total of $46,200, and J. Lloyd Brown, also for the Department, set compensation at $30,400, $16,600, and $1,400, for a total of $48,400. The jury, after 45 minutes of deliberation, set compensation as follows: $34,000 for the land taken, $16,600 for damages to the remainder, and $1,200 for the temporary easement (total $51,800).

In his written motion for a new trial, Graham argued that the jury verdict was so inadequate that the jury must have misunderstood the applicable law. Graham further alleged therein that the verdict

was arrived at by an "antecedent agreement of the jurors to be bound by the use of an overt quotient mechanism," said verdict therefore being void.

The supporting affidavit of Graham was in pertinent part as follows: Graham had personally interviewed jurors Kalisz, Repking, Gillespie, and Miller. Kalisz had stated that upon retiring to the jury room to consider their verdict, the jurors had entered into an "overt oral agreement" among themselves that they would take the following "mechanical steps to arrive at a verdict": Each juror was to write down his own estimate of "separate high and low values" of the entire property owned by Graham, the value of the land taken, and the damages to the remainder; the jurors' "high" values of said amounts were to be added together, and the "low" values of said amounts separately added together, to yield average estimates of "their respective high and low values" of the amounts in issue; those resulting averages were to be compared with the respective averages of the witnesses, and the jury was to render its verdict for the party whose averages were closest to the jury's averages; the jury then followed this procedure and decided that the averages of the Department's witnesses were closest to the jury's own averages and rendered its verdict according to the agreement. Thereafter, Graham submitted a proposed affidavit to Kalisz, which proposed affidavit Kalisz told Graham correctly described what the jury had done to reach a verdict; however, Kalisz would not sign the proposed affidavit. Graham then showed the proposed affidavit which Kalisz would not sign to jurors Repking and Gillespie, each of whom stated that said proposed affidavit correctly described how the jury had arrived at its verdict; however, neither would sign the proposed affidavit. Graham conferred with juror Miller, "who advised affiant that in the jury room he had taken paper and put down highs and lows and tried to arrive at a compromise."

Appended to Graham's affidavit as an exhibit was the proposed affidavit referred to in Graham's affidavit as having been submitted to jurors Kalisz, Repking and Gillespie. Said proposed affidavit's description of how the jury had reached its verdict was essentially verbatim of the description in Graham's affidavit.

Also submitted in support of Graham's motion for a new trial was the affidavit of juror David Pals. After setting forth that Pals had been a juror in the trial of the case at bar, the text of the affidavit stated in its entirety

"that after the case was submitted to the jury, the jury agreed unanimously on the following procedure in order for it to arrive

at a verdict, to-wit:

> The jury, after thorough consideration of all the testimony and evidence presented at the trial, discussed how much the value of the property should be. After a thorough discussion of the evidence, it was found that the figure should be around the $50,000.00 figure. In order to arrive at a reasonable compromise, each juror wrote his estimate of this value on a piece of paper and an average was taken. This average was not the entire method of fixing value but only an aid in establishing a compromise. After the compromise figure was arrived at, the jury was wholeheartedly in agreement."

After a hearing, the trial court denied Graham's motion for a new trial in a handwritten order in which the court found, *inter alia*, that Graham's affidavit was hearsay and should not be considered, that juror Pals' affidavit supported the verdict and did not describe a quotient verdict, that comparison of the evidence and the verdict showed that the verdict was not a quotient verdict, and that the verdict was within the range of opinion testimony rendered. Graham's written motion that the jury be examined individually *in camera* to determine whether a quotient verdict had been rendered was denied. This appeal followed.

Graham argues on appeal that the affidavits of himself and juror Pals show a quotient verdict and that a new trial is therefore required. Graham also argues that the trial court erred in refusing to examine the jurors regarding the allegations in his motion for a new trial. In so arguing, Graham admits that he has made no showing that the portion of the verdict relating to the temporary easement was arrived at by quotient verdict.

In *Illinois Central R.R. Co. v. Able* (1871), 59 Ill. 131, it was shown by affidavit of the officer in charge of the jury that after agreeing to find for the plaintiff, the jurors had differed widely as to the amount of damages. The jurors then agreed that each should write down the amount of damages to which he thought the plaintiff entitled; said amounts would be added together and divided by the number of jurors, and the result should be the verdict. This was done. Our supreme court stated the rule that while jurors may resort to a process of this sort as a mere experiment, and for the purpose of ascertaining how nearly the result may suit the views of the different jurors, yet a preliminary agreement that such a result shall be the verdict will vitiate a verdict found under and by virtue of such an agreement. Accordingly, the court reversed the cause and remanded, despite acknowledging that a juror swore that there was considerable

consultation after the quotient was arrived at, and that each juror agreed upon the result thus reached as his verdict. Accord, *Kelley v. Call* (1944), 324 Ill. App. 143, 147, 57 N.E.2d 501, 502-03 (noting that such a verdict is void).

■■ ■ The Department argues that Graham's affidavit is hearsay which the court properly refused to consider. It has been held that an affidavit setting up that the verdict of the jury was the result of chance cannot be upon information and belief of the affiant. (*Phillips v. Town of Scales Mound* (1902), 195 Ill. 353, 361, 63 N.E.2d 180, 184.) However, in *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656, our supreme court ordered a new trial based on the affidavit of defense counsel setting forth what he had been told by jurors regarding their independent investigation of certain facts. (See also *Illinois Central R.R. Co. v. Able* (1871), 59 Ill. 131.) We conclude that it is entirely consistent with *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656, that the trial court and this court consider Graham's affidavit in the instant case.

The Department argues that the affidavits of Graham and juror Pals constitute an improper attempt to impeach the verdict of the jury. Proof by a juror's testimony or affidavit as to the motive, method or process by which the jury reached its verdict is inadmissible. Such proof is, however, competent to show conditions or events brought to the attention of the jury without any attempt to show the effect thereof on the jurors' deliberations or mental processes. (*People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656; *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 240, 386 N.E.2d 134, 137-38.) As both affidavits in question describe events occurring within the jury room, both affidavits are admissible to show such events, and juror testimony in that regard would be admissible as well.

■ The Department argues that Graham has failed to show that the jury agreed in advance to be bound by the average of the figures written down by each juror. Such an advance agreement must be shown, to establish that a void quotient verdict was rendered. (See *German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 986-87, 451 N.E.2d 903, 909-10; *Groves & Sand Ridge R.R. Co. v. Herman* (1903), 206 Ill. 34, 36, 69 N.E. 36, 37.) The trial court agreed with the Department in this regard. However, in so doing, the trial court had refused to consider Graham's affidavit and had declined to consider the testimony of the jurors. Graham's affidavit unequivocally stated the jurors' agreement to take certain "mechanical steps" to reach a verdict. We know not what the jurors would have testified to. Pals' affidavit may be construed as indicating that there was no antecedent

agreement among the jurors, though it also suggests a contrary construction.

Thus, while Pals' affidavit supports the trial court's denial of Graham's motion for a new trial, we cannot conclude that there was a thorough and meaningful inquiry on the matter at hand, the court having refused to consider competent evidence on point. (See *People v. Witte* (1983), 115 Ill. App. 3d 20, 30, 449 N.E.2d 966, 974.) However, we cannot order a new trial unconditionally; as we have noted, Pals' affidavit is subject to divergent interpretation, and the testimony of the jurors may or may not support Graham's position. Accordingly, we adhere to the principle that any doubt should be resolved in favor of granting a post-trial evidentiary hearing. *People v. Witte* (1983), 115 Ill. App. 3d 20, 449 N.E.2d 966; *cf. People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656 (holding that, under the circumstances, remand for an evidentiary hearing was unlikely to result in much more proof as to the matters alleged).

We conclude that the instant judgment must be vacated and the cause remanded for an evidentiary hearing as to the matters alleged in Graham's motion for a new trial. Should Graham prove his allegation that an impermissible quotient verdict was rendered, Graham is entitled to a new trial. Should Graham fail in such proof, the trial court is instructed to reinstate the judgment. See *People v. Witte* (1983), 115 Ill. App. 3d 20, 449 N.E.2d 966.

The judgment of the circuit court of Effingham County is vacated, and this cause is remanded for further proceedings consistent with the views expressed herein.

Judgment vacated; cause remanded.

JONES, P.J., and HARRISON, J., concur.