No. 85–6977.   PORTER *v.* ILLINOIS.   Sup. Ct. Ill.   Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I would grant this petition for certiorari to consider the extent of the obligations our decision in *Smith* v. *Phillips,* 455 U. S. 209 (1982), imposes on a trial judge confronted with a claim of juror bias.

I

Petitioner Anthony Porter was convicted of two murders committed in the course of an armed robbery and was sentenced to death.   During *voir dire,* the trial judge read a list of potential witnesses, including the mother of Marilyn Green, one of the victims. He did not ask whether any of the prospective jurors knew any of the persons on the list, and none of them volunteered that they did. After the jury returned a guilty verdict, petitioner waived his right to a jury at the penalty proceeding.   Before the judge dismissed the jurors, however, he addressed them as follows:

> "THE COURT: . . . It was brought to my attention before I actually formally dismissed you that one of the jurors stated that he knew that some other juror purportedly or allegedly went to church—to the same church as one of the decedent's mother.   Is that right, was that you—please identify yourself.
> "MRS. TRICKLET:[*] Yes, but that didn't make any difference to me about that.
> "THE COURT: Thank you, ma'am.   It didn't make any difference?
> "MRS. TRICKLET: No.

---

*The trial transcript incorrectly lists the juror's name as Tricklet, rather than Trigleth.

"THE COURT: Ma'am, your name again?

"MRS. TRICKLET: Lilly B. Tricklet.

"THE COURT: It didn't make any difference to you, you abided by your oath and did you recognize the fact when I had read you the name of all the witnesses in the beginning before we even started, you didn't recognize that?

"MRS. TRICKLET: No.

"THE COURT: When did you finally recognize—

"MRS. TRICKLET: After it had got started and everything was going on.

"THE COURT: But, it made no difference to you, is that right?

"MRS. TRICKLET: No, that is right.

"THE COURT: I will now formally dismiss you. You are all dismissed." 111 Ill. 2d 386, 397–398, 489 N. E. 2d 1329, 1333 (1986).

Defense counsel was not permitted to question Mrs. Trigleth. After he suggested that "the Court should have questioned this juror in detail as to her relationship to that family," *id.*, at 398, 489 N. E. 2d, at 1334, the judge made the following statement:

"This Court will state for the record that in an unusual proceeding, I think probably the most unusual I have ever engaged in in all my years as a lawyer and as a Judge, I did bring back the entire jury and I had not dismissed them and the lady that identified herself was under oath and said for the record that the facts that came to light after the case, sometime after the case had commenced, in earnest, didn't influence her whatsoever.

"Accordingly, this Court felt that going beyond that regarding that issue is not—*would not have been proper, would have invaded the sanctity of the jury and jury deliberation.* Mr. Porter talked to and did, in fact request and have his constitutional right to a jury. That lady was under oath. She was not on trial, Mr. Porter was." *Id.*, at 413–414, 489 N. E. 2d, at 1341 (emphasis supplied).

Petitioner moved for a new trial. He submitted the affidavit of Isaias Torres, the juror who had brought the matter to the court's attention. In his affidavit, Torres stated that "a fellow juror informed him that another juror sitting in judgment of the facts

with them . . . knew the deceased, Marilyn Green's mother and attended church with her." *Id.*, at 402, 489 N. E. 2d, at 1335. He further stated that "this same Black female juror, when the jury was given the case to deliberate on, entered the jury room and said *as far as she was concerned, they could vote guilty right then,* and she made this statement before any discussion was had on the evidence . . . ." *Ibid.* (emphasis supplied). At the hearing on petitioner's motion for a new trial, which was held before the same judge, Mrs. Trigleth was not called as a witness. After a brief oral argument, the judge denied the motion.

The Illinois Supreme Court affirmed the trial court's denial of petitioner's motion for a new trial, with three justices dissenting. Although the State Supreme Court recognized that the trial court's inquiry "could have, and possibly should have, been more searching," it considered the ruling to be within the trial judge's "sound discretion." *Id.*, at 403, 489 N. E. 2d, at 1336. The State Supreme Court concluded: "The burden in this case was on the defendant to support the allegations of his post-trial motion. . . . Not only should the defendant have shown the nature of the relationship between the juror and the victim's mother, but he also had the burden of showing that he was prejudiced by this juror's service." *Id.*, at 404, 489 N. E. 2d, at 1336.

## II

The right to a trial by an impartial jury lies at the heart of due process. See, *e. g., Irvin* v. *Dowd,* 366 U. S. 717, 721–722 (1961). This Court has held that due process requires both "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith* v. *Phillips,* 455 U. S., at 217. When a substantial question of juror bias is presented to the trial court, as it was in this case, we have held that the defendant is entitled to a hearing "'with all interested parties permitted to participate.'" *Id.*, at 216 (quoting *Remmer* v. *United States,* 347 U. S. 227, 230 (1954)).

Under *Smith* v. *Phillips, supra,* the trial judge's inquiry into juror bias in this case fell far short of the minimum required by the Due Process Clause of the Fourteenth Amendment. The judge merely called on the juror to identify herself and then asked her "several times in a leading fashion to reaffirm that her ac-

quaintance with the mother did not influence her" in a colloquy that "could have lasted only seconds." 111 Ill. 2d, at 410, 489 N. E. 2d, at 1339 (Simon, J., dissenting). The trial judge failed to ascertain to any meaningful degree the extent and nature of her relationship with the victim's mother and the point at which she became aware that she was acquainted with the mother. The juror's vague statement that she realized it "[a]fter it had got started and everything was going on" suggests only that she was not aware of it at *voir dire*. She was never asked to explain why she had not brought the matter to the court's attention when she realized the connection; had she done so, one of the alternate jurors could have taken her place. Moreover, the trial court did not allow defense counsel to question her.

The State contends that petitioner had an opportunity to explore the issue of bias at the post-trial hearing on his motion for a new trial. That hearing, however, was woefully inadequate when measured by our decisions in *Phillips* and *Remmer*. At a minimum, due process requires that the defendant be allowed to question the juror on the issue of bias. See *Smith* v. *Phillips*, 455 U. S., at 217, n. 7 ("[D]eterminations made in *Remmer*-type hearings will frequently turn upon testimony of the juror in question"); see also *id.*, at 222 (O'CONNOR, J., concurring). The Illinois Supreme Court criticized defense counsel for failing to call Mrs. Trigleth or obtain an affidavit from her, 111 Ill. 2d, at 403, 489 N. E. 2d, at 1336. However, in light of the trial judge's insistence on the sanctity of the jury's deliberation and his refusal to allow defense counsel to question Mrs. Trigleth while she was under oath, counsel reasonably considered himself foreclosed from contacting her in connection with his motion for a new trial before the same judge. Thus, while petitioner had the burden of showing both bias and actual prejudice, the trial judge's admonitions appeared to deprive him of the only means of doing so.

I continue to believe that the defendant should not bear the burden of showing actual prejudice when the probability of bias is substantial, as it is in this case, see *Smith* v. *Phillips*, *supra*, at 224 (MARSHALL, J., dissenting). However, petitioner never even had the opportunity of demonstrating prejudice due to juror bias. This violated his right to due process and leaves in doubt the impartiality of the jury that convicted him in this capital case. Accordingly, I dissent from denial of the petition for certiorari.