JERRY TAYLOR *et al.*, Plaintiffs-Appellants, v. R.D. MORGAN & ASSOCIATES, LTD., *et al.*, Defendants-Appellees.

Fifth District   No. 5—88—0195

Opinion filed November 27, 1990.

GOLDENHERSH, J., concurring in part and dissenting in part.

Martin L. Perron, of Carr, Korein, Schlichter, Tillery, Kunin & Montroy, of East St. Louis, for appellant.

Charles E. Schmidt and Rebecca J. O'Neill, both of Mitchell, Brandon & Schmidt, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

This appeal arises from a medical malpractice case in which the trial court directed a verdict in favor of the defendants on the mother's claim for medical expenses, and the jury returned a verdict for the defendants on the son's claim. Five issues are presented for review:

(1) whether a directed verdict in favor of defendants and against the plaintiff on the mother's claim for medical expenses was correctly entered;

(2) whether a juror should have been stricken for cause;

(3) whether the jury was properly instructed;

(4) whether a new trial was required due to misunderstanding of the instructions on the part of the jury or juror misconduct; and

(5) whether a post-verdict evidentiary hearing regarding juror misconduct should have been conducted.

The plaintiff,[1] Jerry Taylor, was 16 years old at the time of his injury. His parents had been divorced in 1969, his mother, Vivian

---

[1] Although there are two plaintiffs and two defendants in this case, in general we will refer to the parties as "plaintiff" and "defendant."

Wells, was awarded legal custody, and she took him to live with her in Manhattan, Illinois. Jerry's father, Robert Taylor, lived in the Marion area, and Jerry often stayed with his father when school was not in session. Vivian Wells had a vacation home on a lake near Marion, and Jerry would be with her on the weekends.

During the summer of 1983 Jerry stayed with his father in the Marion area and he enrolled in high school in Marion for the fall term. While Jerry was with his father on a more or less permanent basis during this interval, Vivian Wells at no time relinquished legal custody. Even when Jerry was with his father, she fulfilled the obligations of the custodial parent insofar as making decisions with respect to Jerry's well-being.

On September 8, 1983, Jerry was riding a motorcycle when he clipped the corner of the bumper of a parked car with his right foot and seriously injured it. The extent of the injuries sustained in the collision itself was a matter highly disputed at trial because its degree determined to a large extent the appropriate method of treatment.

The jury was instructed that Jerry Taylor claimed Dr. Morgan was negligent in one or more of the following respects:

(a) amputated a greater portion of Jerry Taylor's leg and foot than was necessary;

(b) failed to perform a below-the-knee amputation in an appropriate manner; and

(c) performed surgery on Jerry Taylor without obtaining an informed consent before doing a below-the-knee amputation.

With regard to the first charge, the positions taken by the parties may be summarized as follows. The plaintiff conceded that the foot was seriously injured in the original collision, but presented testimony which established that the heel pad (that portion of tissue and skin that lies beneath the bones of the foot that comprise the heel) was intact. The defendant presented testimony which established that, not only the toes and the front part of the foot, but also the heel pad was irreparably damaged. The condition of the heel pad was of crucial importance because all the experts agreed that if it were nonviable and irreparably damaged, then no part of the foot could be saved and the below-knee (b/k) amputation, which Dr. Morgan performed, was the proper level of amputation. On the other hand, if the heel pad had been viable, less drastic amputative procedures, which would have left Jerry with a part of his foot and the ability to walk without a prothesis, should have been utilized.

The testimony on the second charge was also disputed. The plaintiff's expert, Dr. Greenwalt, who subsequently operated upon Jerry

because of the stump's failure to heal, testified that Dr. Morgan negligently left redundant bone and tissue at the operative site and failed to bevel the edges of the large bone of the leg when he performed the amputation. Dr. Morgan and the experts who testified on his behalf denied this charge.

A summary of the evidence submitted by the plaintiff on the informed consent charge reveals that Dr. Morgan arrived at the hospital at 8:40 p.m. and after examining Jerry told him, "I am going to take your right foot off." Jerry's father, Robert, arrived shortly after this occurred, and Robert was also told that the below-knee amputation was necessary. Robert Taylor and his wife, Sally, asked the doctor to do all that he could to save Jerry's foot and suggested that he be sent to St. Louis by helicopter if necessary. The doctor responded that if they tried to send him to St. Louis the boy might go into shock and die en route. Mr. Taylor originally would not sign the surgical consent form presented by Dr. Morgan. Dr. Morgan knew that Vivian Wells had legal custody of Jerry, and he consulted with the hospital administrator and the hospital attorney regarding the consent question. Dr. Morgan did not want to wait for Vivian Wells, and he eventually persuaded Mr. Taylor to sign the consent form. Mr. Taylor would not have signed the consent form if he had been told that amputation could be postponed or that there were feasible alternatives to cutting off the leg immediately. Mr. Taylor did sign the consent form at approximately 9:45 p.m., and at 10:25 p.m. Jerry Taylor was taken from the emergency room to the operating room.

Jerry's mother, Vivian Wells, was en route between Manhattan, Illinois, and her weekend home in Marion in accordance with her usual practice. She learned of the accident upon her arrival in the Marion area and rushed to the hospital, but Dr. Morgan was already performing the amputation. She never consented to the amputation.

The evidence from the defendant's standpoint on the informed consent question reveals the following. Dr. Morgan tried to locate Vivian Wells before operating on her son. Several calls were made to the mother's home in northern Illinois. The Williamson County sheriff's department attempted to contact the police in northern Illinois to see if they could help locate the plaintiff's mother, but no one could locate her. The defendant was of the opinion that Jerry Taylor needed definite treatment at that time and obtained permission to render that treatment from Robert Taylor, his father. As has already been noted, the plaintiff was actually living with his father at the time of the accident.

Based on this evidence the trial court gave the two instructions

on the informed consent issue set forth below. The second of these was numbered defendants' instruction No. 16 and was given over plaintiff's objection:

"Ordinarily, a surgeon must obtain the consent of a patient before operating on him. However, if the patient is a minor then the surgeon is excused from obtaining the consent of the patient to the operation. In that event, he must obtain consent from a person authorized to consent to the operation, unless it is impractical to obtain consent because of an emergency or because delay would endanger the patient's health.

\* \* \*

Any parent may consent to the performance of a medical or a surgical procedure upon his or her child by a physician licensed to practice medicine and surgery."

With regard to the mother's claim for medical expenses upon which the trial court directed a verdict in the defendant's favor, the evidence revealed the following. Vivian Wells testified that she paid for the continuing medical treatment after surgery, that the second prothesis cost about $2,000 or more, and that she paid for some of it, but the remainder was never paid for. On cross-examination, however, she indicated that she could not tell how much she actually paid for the first prothesis and could only give a rough estimate of the cost of the second prothesis. Further, she could not recall at all how much Dr. Greenwalt, the subsequent treating doctor, had charged for the work he did. Jerry Taylor testified that the total cost for the two protheses "and everything" was $13,900 and of that sum $12,700 had been paid. Based on this evidence the trial court directed a verdict in the defendant's favor on the mother's claim for medical expenses.

■ Plaintiff argues that the trial court was in error in directing a verdict since there was evidence from which a jury could have determined the amount of the medical bills sustained by the plaintiff as a result of the conduct of the defendant. The defendant first argues that the issue is academic because the jury found that the defendant was not liable; therefore, no verdict for Vivian Wells for medical expenses could stand in any event. Without addressing that contention, we find that the defendant is correct that the plaintiff failed to prove that she paid or was liable to pay a specific amount that was directly attributable to defendant's alleged malpractice. While the testimony of Jerry Taylor and his mother taken together might have presented a jury question as to the total amount of bills incurred for all of his treatment, and the fact that Vivian Wells paid all or most of them, there is no delineation in the record between the amount of the bills

incurred as a result of the original injury and the amount of the bills incurred as a result of the defendant's alleged misconduct. There is no way that the jury could have appropriately assessed the damages attributable to the defendant's alleged misconduct if that issue had been presented to them. The plaintiff has the burden of establishing a reasonable basis for computation of damages. (*Kohlmeier v. Shelter Insurance Co.* (1988), 170 Ill. App. 3d 643, 654, 525 N.E.2d 94, 102.) An award of damages may not be based on conjecture or speculation and must be proved to result from the complained-of wrong. (*Callier v. Callier* (1986), 142 Ill. App. 3d 407, 418, 491 N.E.2d 505, 512.) Therefore, we find that the trial court did not err in directing a verdict in the defendant's favor on this issue.

■ The plaintiff's next contention is that the trial court erred in failing to strike juror Ronald Mann for cause. The defendant maintains that this issue is waived because the plaintiff had not exhausted his peremptory challenges at the time he accepted Mann as a juror. (See *People v. Sanchez* (1986), 115 Ill. 2d 238, 265, 503 N.E.2d 277, 286 (failure to exhaust peremptory challenges, while not conclusive, "tends to belie a claim of unfair prejudice"), *cert. denied* (1987), 483 U.S. 1010, 97 L. Ed. 2d 745, 107 S. Ct. 3240; *People v. Davenport* (1985), 133 Ill. App. 3d 553, 559, 479 N.E.2d 15, 20 (failure to challenge for cause or exercise a peremptory challenge results in waiver); but see *People v. Hines* (1988), 165 Ill. App. 3d 289, 297, 518 N.E.2d 1362, 1367 (declining to apply the waiver rule), *cert. denied* (1988), 488 U.S. 895, 102 L. Ed. 2d 226, 109 S. Ct. 236.) We are unable to address defendant's argument, however, because the record does not contain a transcript of the *voir dire* proceedings. Thus, we are unable to determine whether the plaintiff had exhausted his peremptory challenges.

While the record before us does not contain a transcript of the *voir dire* proceedings, it does contain a transcript of a conference held outside the presence of the jury at which the parties' attorneys presented their arguments regarding Mann and another juror. The record indicates that the plaintiff's attorney argued, as he does in this court, that Mann should have been excused because he is employed as a laboratory supervisor at the Carbondale Clinic and his wife is a nurse. Mann was also acquainted with one of the defendant's expert witnesses, and he also indicated that he had read articles in medical journals regarding malpractice suits. Plaintiff's attorney also stated at one point that Mann was acquainted with the defendant, but this was disputed by the defendant's attorney. The defendant's attorney stated that Mann said he could be fair and reach a decision based on the evi-

dence and would not be influenced by matters outside of the courtroom. In denying the plaintiff's motion to strike juror Mann, the trial court noted that it had asked Mann "whether he believed the articles he read on malpractice and he said no." The court stated its impression that Mann had clearly demonstrated no prejudice towards the plaintiff's position.

The plaintiff contends that Mann's employment in the medical field, his marriage to a nurse, his acquaintance with the defendant's witnesses, and his exposure to opinions in medical publications critical of medical malpractice lawsuits indicate a probable bias in favor of the defendant. The plaintiff also argues that Mann's bias is further demonstrated by the fact that one of the defendant's witnesses, Karen Suguitan, worked at the Carbondale Clinic where Mann was employed. Although this fact was not brought out during *voir dire,* plaintiff claims he was prejudiced by Mann's failure to reveal this information, citing *People v. Witte* (1983), 115 Ill. App. 3d 20, 449 N.E.2d 966.

■ ■ The determination of whether or not a prospective juror will be fair and impartial rests within the sound discretion of the trial judge and will not be set aside unless it is against the manifest weight of the evidence. (*People v. Goff* (1985), 137 Ill. App. 3d 108, 118, 484 N.E.2d 414, 421.) A juror need not be totally ignorant of the facts and issues involved in a case, and the party challenging a juror has the burden of demonstrating a potential bias. (See *Goff*, 137 Ill. App. 3d at 118, 484 N.E.2d at 421.) Although there is no transcript of the *voir dire* proceedings, the record before us indicates that the trial court accepted Mann's statements that he could be fair and reach his decision on the evidence heard in the courtroom.

> "All that either side is entitled to in any lawsuit is a jury composed of persons who have sworn on their oaths that they can lay aside anything that they might have learned about the case from whatever source together with any opinions they may have formed and judge the case solely on the facts produced in open court and on the law given them by the trial judge." *People v. Farris* (1980), 82 Ill. App. 3d 147, 152, 402 N.E.2d 629, 633-34.

■ Although the trial judge need not believe a potential juror's statement that he is unbiased, the trial court is in a superior position to observe a venireman's demeanor and judge his credibility. (See *People v. Davis* (1983), 95 Ill. 2d 1, 19, 447 N.E.2d 353, 362, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507.) Based on the record before us, we cannot say that the trial court's finding that ju-

ror Mann had demonstrated no prejudice towards the plaintiff's position was against the manifest weight of the evidence. We find, therefore, that the trial court did not abuse its discretion in failing to dismiss Mann for cause. Moreover, the fact that Mann did not reveal that one of the defendant's witnesses worked at the Carbondale Clinic does not alter our finding. *People v. Witte*, relied upon by the plaintiff, is clearly distinguishable. In *Witte*, the court vacated the defendant's conviction because one of the jurors, in response to a direct question, failed to reveal his relationship with employees of the sheriff's department. Here, there is no evidence that juror Mann failed to answer the questions that were asked of him or answered any questions falsely.

The plaintiff next contends that the trial court erred in giving defendant's instruction No. 16, which states that any parent may consent to a surgical procedure upon his or her child. This instruction is not an Illinois Pattern Jury Instruction (IPI), but it parallels the language of section 2 of "An Act in relation to the performance of medical, dental or surgical procedures on and counseling for minors" (Ill. Rev. Stat. 1987, ch. 111, par. 4502 (hereinafter the Surgical Procedures Act)). The plaintiff maintains that Instruction No. 16 is in conflict with IPI Civil 2d No. 105.05 (Illinois Pattern Jury Instructions, Civil, No. 105.05 (2d ed. 1971)), which was also given to the jury. IPI Civil 2d No. 105.05 instructs the jury that while a surgeon must ordinarily obtain the consent of a patient before operating on him, if the patient is a minor, then the surgeon must obtain consent from "a person authorized to consent to the operation."

█▄▆ We do not agree with the plaintiff that the two instructions in question are in conflict. IPI Civil 2d No. 105.05 instructs the jury that the doctor must obtain consent from someone authorized to do so. Defendant's Instruction No. 16 supplements IPI Civil 2d No. 105.05 by informing the jury that among those authorized to consent is "any parent." "In limited circumstances, amplification or clarification of IPI instructions may be permitted in the discretion of the trial court." (*Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 857-58, 417 N.E.2d 1099, 1101; see also *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 454-55, 394 N.E.2d 391, 393, *cert. denied* (1980), 444 U.S. 1018, 62 L. Ed. 2d 648, 100 S. Ct. 671.) Plaintiff contends, however, that Instruction No. 16 misstates the law with respect to an action for medical malpractice based on failure to obtain the informed consent of a parent, citing *Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859, 469 N.E.2d 659, and section 608(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 608(a)).

Section 608(a) provides:

> "Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, the custodian may determine the child's upbringing, including but not limited to, his education, *health care* and religious training, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would clearly be contrary to the best interests of the child." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 40, par. 608(a).)

Plaintiff maintains that under section 608(a), as interpreted in *Dymek*, only the custodial parent may consent to an operation. In *Dymek*, a noncustodial mother secretly sent her child to a psychiatrist for psychotherapy twice a month over a period of one year. There was no allegation of an emergency situation, nor did the mother allege she was precluded from seeking court permission for the psychiatrist's treatment. The court held that the custodial father had a cause of action for the psychiatrist's alleged surreptitious, unauthorized psychiatric treatment of his son. *Dymek*, 128 Ill. App. 3d at 865, 469 N.E.2d at 664-65.

We find *Dymek* to be inapposite. The *Dymek* court found that the psychiatrist's action over the one-year period of psychotherapy constituted a severe interference with the father's custodial prerogatives and duties in the area of his minor child's health care. (*Dymek*, 128 Ill. App. 3d at 865, 469 N.E.2d at 664.) In the instant case, the plaintiff was brought to the hospital following a motorcycle accident in which he suffered a traumatic injury to his foot requiring medical care. The defendant took several steps to try to locate the mother, including calling her home in northern Illinois and contacting the Williamson County sheriff's department to see if they could help in locating her. When plaintiff's mother could not be located, defendant obtained permission to treat the plaintiff from his father, with whom he had been living and who had actual custody at the time.

■■ ■ We agree with the plaintiff, however, that there is at least the appearance of a conflict between section 2 of the Surgical Procedure Act, upon which defendant's instruction No. 16 was based, and section 608(a) of the Illinois Marriage and Dissolution of Marriage Act. Section 2 allows either parent to consent to medical procedures, while section 608(a) vests the power to determine the child's health care in the custodial parent. When two statutes relate to the same subject matter, they should be construed harmoniously where possible. (*Bray v. Industrial Comm'n* (1987), 161 Ill. App. 3d 87, 92, 513

N.E.2d 1045, 1048.) Applying this principle to the facts before us, we find the most harmonious construction of the two statutes at issue to be that while the power to consent to surgical procedures on a child ordinarily rests exclusively with the custodial parent, when that parent is not available, the parent who has actual custody and is available may consent to the surgery. Accordingly, we find that defendant's instruction No. 16 correctly stated the law applicable to this case, and we find no error.

■■■ ■ The plaintiff next contends that the trial court erred in refusing to grant a new trial where it was clear that the jury misunderstood the instructions of the court. The plaintiff presented the affidavits of two jurors which stated that all of the jurors understood the instructions to require that they must find the defendant guilty of all three alleged acts of negligence in order to find for the plaintiff. The affidavits also stated that all of the jurors agreed that the defendant was guilty of one of the alleged acts of negligence, but they could not agree upon the other allegations. In addition to the two affidavits by the jurors, plaintiff's counsel also submitted an affidavit in which he stated that he spoke to several other jury members who agreed that they understood the instructions to require that they find the defendant guilty of all three alleged acts of negligence before they could find for the plaintiff. Plaintiff argues that this misunderstanding by the jurors deprived him of a fair trial.

> "It is well established in this State, and almost universally recognized, that a jury may not impeach its verdict by affidavit or testimony which shows the motive, method or process by which the verdict was reached.
>
> * * *
>
> The authorities are in accord that the testimony or affidavits of jurors cannot be used to show that the jury misunderstood the instructions or the law * * *." (*Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 537, 539, 431 N.E.2d 361, 363, 365.)

(See also *People v. Preston* (1979), 76 Ill. 2d 274, 288, 391 N.E.2d 359, 365-66; *People v. Holmes* (1978), 69 Ill. 2d 507, 511, 372 N.E.2d 656, 659.) We find no error by the trial court in refusing to grant a new trial on this basis.

Finally, the plaintiff contends that the trial court should have granted a new trial, or in the alternative held an evidentiary hearing, because of juror misconduct. The allegations of misconduct involve juror Ronald Mann, the same juror who was the subject of plaintiff's unsuccessful challenge for cause. Plaintiff submitted the affidavits of

two jurors in support of his motion. The affidavit of Margaret Faro relates that the jury was confused concerning the instructions, and that she, as the foreperson of the jury, began to write a note to the court asking about the instructions. According to Faro, Mann would not let her express herself and she was not allowed to finish the note. The affidavit then states:

"Mann insisted we must find against the [plaintiff] and in favor of Dr. Morgan.

Mr. Mann worked at Carbondale Clinic and urged us not to find against a doctor in a malpractice case. I worked at a hospital and I argued doctors could make mistakes, but he would not agree.

\* \* \*

At the end, Mr. Mann told us that he had discussed the case with a nurse who told him Dr. Morgan could not have saved the foot. Mr. Stilley, another juror, asked Mr. Mann if he talked with the nurse before or after the trial started and Mr. Mann said it was after the trial started."

Plaintiff also submitted the affidavit of Randall Stilley. Stilley's affidavit states that Mann indicated several times he would not find against Dr. Morgan, and that at one point Mann said that he had discussed the case with a nurse.

The defendant submitted the affidavits of two nurses, including that of Karen Suguitan, which stated that Suguitan had not discussed the case with Mann. In his affidavit, Mann stated that he "heard someone comment to the effect that Karon [*sic*] said something about the foot could not be saved." Mann stated that when he realized that the reference was to "Karon Sugitan [*sic*]" and the lawsuit in which he was a juror he immediately left the room. Mann denied ever having any conversation with Suguitan and stated that the comment had no effect on his decision. Mann admitted that he told the other jurors about the comment that he had overheard, but he maintained that this occurred after all the jurors had signed the verdict forms and were getting ready to go back into the courtroom.

Plaintiff argues that he is entitled to a new trial because the affidavits established that Mann answered falsely on *voir dire* when he said he would follow the instructions of the court and decide the case based upon the evidence. Plaintiff also argues that the information Mann acquired outside of the courtroom influenced his decision and was improperly related to the other jurors. Plaintiff cites *Schulz v. Rockwell Manufacturing Co., Rockwell International Corp.* (1982), 108 Ill. App. 3d 113, 438 N.E.2d 1230, and *Heaver v. Ward* (1979), 68

Ill. App. 3d 236, 386 N.E.2d 134, in support of his position. In *Schulz*, the court reversed and remanded for a new trial where the post-trial affidavits established that two jurors had answered falsely when asked on *voir dire* whether they had ever worked for or had any contact or connection with the defendant company. *Schulz* held that a new trial is required where it is established that a juror answered falsely on *voir dire* and that prejudice resulted therefrom. *Schulz*, 108 Ill. App. 3d at 121-22, 438 N.E.2d at 1235.

In *Schulz*, the affidavits clearly established that the jurors had not been truthful on *voir dire*. In the instant case, however, while the affidavits show that Mann vigorously supported the defendant's position during the jury deliberations, we are unable to glean from the record before us whether Mann's position was the result of the evidence presented at trial or some preexisting personal bias. See *People v. Porter* (1986), 111 Ill. 2d 386, 404-05, 489 N.E.2d 1329, 1336-37, *cert. denied* (1986), 479 U.S. 898, 93 L. Ed. 2d 272, 107 S. Ct. 298.

Similarly, we are unable to say that the evidence presented concerning the out-of-court statement of the nurse is sufficient to grant a new trial. *Heaver v. Ward*, relied upon by the plaintiff, is distinguishable. In *Heaver*, the foreman of the jury made an independent visit to the accident site and made a diagram of the intersection which he brought to the jury room during the deliberations, along with a copy of the "Rules of the Road." While there was conflicting evidence regarding whether the diagram was shown to the other jurors, it was clear that at least one juror was shown the "Rules of the Road." The court reversed and remanded for a new trial, finding that it was sufficient that the unauthorized evidence may have improperly influenced the verdict. *Heaver*, 68 Ill. App. 3d at 241, 386 N.E.2d at 139.

In this case, the affidavits of jurors Faro and Stilley indicate that Mann *discussed* the case with a nurse and *talked* with a nurse. Mann claims, however, that he merely *overheard* a conversation concerning the condition of the plaintiff's foot. Furthermore, Mann claims that he told the jurors about this out-of-court statement after they had concluded their deliberations. The affidavits of Faro and Stilley are equivocal on this point. Therefore, based on the evidence presented to the trial court, we find no abuse of discretion in refusing to grant a new trial. We also find, however, that the affidavits raised a sufficient inference of possible juror misconduct to require an evidentiary hearing. The condition of the plaintiff's heel was hotly contested and was the pivotal issue in the case; the alleged out-of-court statement directly concerned this crucial matter. While we are aware of the difficulties the jurors may face in attempting to recall events

which occurred years ago, and while we are reluctant to again interrupt the jurors' lives and involve them in additional court proceedings, those considerations do not outweigh the need to insure that the parties received a trial untainted by bias or extraneous information.

■■■ Accordingly, we vacate the judgment in favor of the defendant and remand to the trial court for an evidentiary hearing. (See *Department of Transportation v. Graham* (1985), 130 Ill. App. 3d 589, 594, 474 N.E.2d 810, 813; *Brown v. Johnson* (1978), 60 Ill. App. 3d 76, 80, 378 N.E.2d 757, 760.) If the trial court finds that juror Mann engaged in improper discussions concerning the case outside of the courtroom, or that the substance of any out-of-court statements was communicated to the jury during their deliberations, and the court further finds that the plaintiff was thereby prejudiced (see *People v. Harris* (1988), 123 Ill. 2d 113, 132, 526 N.E.2d 335, 342 ("[a] verdict will not be set aside where it is obvious that no prejudice resulted from a communication to the jury"), *cert. denied* (1988), 488 U.S. 902, 102 L. Ed. 2d 240, 109 S. Ct. 251, then a new trial shall be ordered. If, on the other hand, the trial court finds that there was no improper discussion of the case, and that no improper out-of-court statements were related to the jury during their deliberations, or that the plaintiff suffered no prejudice, then the judgment in favor of the defendant should be reinstated.

Vacated and remanded with directions.

RARICK, J., concurs.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I respectfully dissent as to the question of conflict between instruction No. 16 and Illinois Pattern Jury Instructions, Civil, No. 105.05 (2d ed. 1971). As to the other aspects of the majority's opinion, I concur.

The majority correctly delineates the potential conflict between the two instructions concerning parental authorization of medical procedures, but resolves it erroneously, in my view. It is a standard principle of interpretation that the particular will control over the general. (See *Bray v. Industrial Comm'n* (1987), 161 Ill. App. 3d 87, 513 N.E.2d 1045.) In this particular situation, the proper interpretation would be to consider section 2 of the Surgical Procedures Act (Ill. Rev. Stat. 1987, ch. 111, par. 4502) as the general and section 608 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat.

1987, ch. 40, par. 608(a)) as the particular. Since section 608 defines the particular status of "parent" in the situation of a divorced couple with children over whom they can exert custodial control, it would be the predicate in defining that same term as found in section 2. Given those circumstances, plaintiffs' contention is correct that the sections cited above are in conflict and that the jury was improperly instructed since, in the circumstances of this case, defendants' instruction No. 16 improperly states the law. Although I agree with the majority that in certain limited circumstances a trial court may amplify or clarify IPI instructions in its discretion (see *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391, *cert. denied* (1980), 444 U.S. 1018, 62 L. Ed. 2d 648, 100 S. Ct. 671), in this circumstance, the trial court did so in a manner which did not accurately reflect the applicable law. I would therefore reverse and remand for new trial.