647 N.E.2d 972 (1995)
164 Ill.2d 400
207 Ill.Dec. 479
The PEOPLE of the State of Illinois, Appellee,
v.
Anthony PORTER, Appellant.
No. 74438.
Supreme Court of Illinois.
January 26, 1995.
Rehearing Denied April 3, 1995.
*973 Kenneth N. Flaxman, Chicago, for appellant.
Roland Burris, Atty. Gen., Springfield, and Jack O'Malley, State's Atty., Chicago (Arleen C. Anderson, Asst. Atty. Gen., Chicago, and Renee G. Goldfarb and James S. Veldman, Asst. State's Attys., of counsel), for the People.
Justice FREEMAN delivered the opinion of the court:
A Cook County jury convicted defendant of several crimes committed in Chicago's Washington Park on August 15, 1982, including the *974 killing of Jerry Hillard and Marilyn Green. For the murders, the trial judge sentenced defendant to death. A majority of this court affirmed the convictions and sentence on direct appeal. (People v. Porter (1986), 111 Ill.2d 386, 95 Ill.Dec. 465, 489 N.E.2d 1329.) The United States Supreme Court denied certiorari. Porter v. Illinois (1986), 479 U.S. 898, 107 S.Ct. 298, 93 L.Ed.2d 272.
Defendant thereafter sought, in a post-conviction action (Ill.Rev.Stat.1987, ch. 38, par. 122-1 et seq.), a new trial, but relief was denied without an evidentiary hearing. Defendant pursued this appeal, seeking a hearing on his petition's allegations. 134 Ill.2d R. 651(a).
Finding no basis for an evidentiary hearing, we affirm the denial of post-conviction relief. What facts are pertinent to that disposition are explained in the course of addressing the issues here raised.
Ineffective Assistance of Trial Counsel
Defendant contends he is entitled to a new trial because his trial counsel purposefully did not generate certain allegedly exculpatory evidence. That evidence was not generated, defendant alleges, because he had not paid in full counsel's fee for legal services. Though not identified, the requisite constitutional foundation (Ill.Rev.Stat.1987, ch. 38, par. 122-1) for defendant's claim is found in sixth and fourteenth amendment protections. See U.S. Const., amends. VI, XIV.
The evidence pointed to is the proposed testimony of several persons which could have suggested Alstory Simon, rather than defendant, killed Hillard and Green. The evidence, summarized below, is stated in affidavits and recorded sworn oral statements filed in support of defendant's post-conviction petition.
Joyce Haywood would have testified that the victims had walked to the park with Alstory Simon and his girlfriend, Inez Johnson. The victims' mothers and Christina Green, Marilyn Green's sister, would have corroborated the point. Ricky Young could have testified that Hillard had been selling drugs for Simon and that a dispute existed between Simon and Hillard over money. Roy Davis, Hillard's brother, would have stated, in contrast, that no animosity existed between defendant and Hillard, who were members of the same street gang. Finally, Joyce Haywood would have revealed further that Simon threatened her when she asked about what had happened in the park.
The State argues that the evidence should be ignored because defendant's appellate counsel did not raise an ineffective-assistance claim on that basis on direct appeal. Appellate counsel did not represent defendant during trial proceedings.
It is, of course, the general rule that post-conviction petitioners are barred from raising claims that either were or could have been raised on direct appeal. (People v. Albanese (1988), 125 Ill.2d 100, 104-05, 125 Ill.Dec. 838, 531 N.E.2d 17; but see People v. Thompkins (1994), 161 Ill.2d 148, 158, 204 Ill.Dec. 147, 641 N.E.2d 371 (noting the exception for "fundamental fairness").) The trial record reveals what representation was afforded. Thus, a claim of ineffectiveness not raised in relation to the representation shownfor example, the vigorousness of cross-examinationcannot be resurrected in a post-conviction proceeding. (See People v. Erickson (1994), 161 Ill.2d 82, 88, 204 Ill.Dec. 231, 641 N.E.2d 455.) The procedural bar forces acknowledgment of the finality of a conviction and sentence, a fundamental concept at work in a post-conviction action given that only collateral relief is offered. See Erickson, 161 Ill.2d at 87, 204 Ill.Dec. 231, 641 N.E.2d 455.
But the bar cannot operate here. No foundation existed in the trial record to raise, on direct appeal, the particular ineffectiveness claim defendant now makes. Except for Davis, who testified only to identify his brother as one of the murdered victims, the witnesses who would have supplied the purportedly exculpatory evidence were not called at trial. The representation defendant complains of was the very reason their testimony was not given and so fixed in the trial record. Principles of res judicata and waiver, the mechanisms which operate to preclude post-conviction claims that were or could have been raised, cannot apply. See *975 Erickson, 161 Ill.2d at 93, 204 Ill.Dec. 231, 641 N.E.2d 455.
Nevertheless, defendant's claim fails on its merits. Even assuming counsel performed incompetently in not generating the proposed testimony, sufficient prejudice did not result to support the claim. (See People v. Albanese (1984), 104 Ill.2d 504, 525-27, 85 Ill.Dec. 441, 473 N.E.2d 1246, adopting Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (holding that ineffective-assistance claims may be determined on examination of the prejudice prong of the two-part test alone).) And, parenthetically, the reason why the testimony was not generated is therefore immaterial.
Prejudice is measured by looking at findings unaffected by error and accounting for the error's effect on remaining findings to answer whether the decision would "reasonably likely" have been different. (Strickland, 466 U.S. at 695-96, 104 S.Ct. at 2068-69, 80 L.Ed.2d at 698-99.) The assessment "must exclude the possibility of arbitrariness, whimsy, caprice, `nullification,' and the like." (Strickland, 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.) The showing of prejudice must be a strong one. People v. Stewart (1984), 101 Ill.2d 470, 492, 79 Ill.Dec. 123, 463 N.E.2d 677.
The evidence against defendant was considerable. The unaffected findings include the testimony of two eyewitnesses, Henry Williams and William Taylor. Williams recounted how defendant came up to him in the park on the night of the murders, put a gun to his forehead, and robbed him of $2 before approaching the area where Hillard and Green sat together. (Porter, 111 Ill.2d at 391, 95 Ill.Dec. 465, 489 N.E.2d 1329.) Williams saw as defendant pointed the gun at Hillard from a few feet away and heard several gunshots. (Porter, 111 Ill.2d at 391, 95 Ill.Dec. 465, 489 N.E.2d 1329.) Taylor, too, saw defendant point the gun at Hillard and fire. Porter, 111 Ill.2d at 391, 95 Ill.Dec. 465, 489 N.E.2d 1329.
The unaffected findings also include the testimony of Anthony Liance, a Chicago police officer who responded to reports of the shootings. Liance's testimony placed defendant in the park near where the shootings occurred shortly after 1 a.m. Porter, 111 Ill.2d at 391-92, 95 Ill.Dec. 465, 489 N.E.2d 1329.
The error in not generating the proposed testimony deprived the jury of evidence complementing the alibi defendant presented at trial. But accounting for the error's effect shows no real prejudice could have resulted.
Defendant's alibi was established by Kenneth Doyle and Georgia Moody. They testified that defendant could not have been in Washington Park when the murders occurred. Both stated that defendant was at his mother's house until at least a full hour after the murders, sometime after 2 a.m. See Porter, 111 Ill.2d at 393-94, 95 Ill.Dec. 465, 489 N.E.2d 1329.
The proposed testimony supporting defendant's ineffectiveness claim could supply but circumstantial proof suggesting who was the "true" murderer of Hillard and Green. But that evidence would simply echo the alibi the jury rejected in view of the testimony of Williams and Taylor. If the jury believed defendant was at his mother's house when Hillard and Green were shot in the park, someone else had to be responsible. That the proposed testimony could provide speculation as to whom that someone else was is immaterial. Cf. Thompkins, 161 Ill.2d at 166-68, 204 Ill.Dec. 147, 641 N.E.2d 371 (noting that where evidence did not show defendant to have been the gunman in a double murder, a hearing was necessary to evaluate a claim of effectiveness in not presenting mitigating evidence complementary to the defense).
Defendant relies independently on the failure to present Roy Davis' proposed testimony to mount a slightly different ineffectiveness claim. Davis, as noted, stated that he would have testified that his murdered brother and defendant were friendly members of the same street gang. Davis' testimony would have tended to disprove that defendant, Hillard's friend, would have killed him.
There is no indication as to whether trial counsel was aware of Hillard's and defendant's shared gang affiliation and amicability. *976 Even if counsel was not so aware, the failure to discover and present such evidence could not have, for the same reasons explained above, caused sufficient prejudice. And if counsel was aware of such facts, not presenting Davis' testimony would have been an unchallengeable choice of trial strategy. (See People v. Flores (1989), 128 Ill.2d 66, 106, 131 Ill.Dec. 106, 538 N.E.2d 481.) Evidence of street gang affiliation would hardly have endeared defendant to the jury.
Considering the collective effect of the testimony, as well as Davis' alone, we do not conclude a different trial outcome was reasonably likely.
Jury Participation of Lillie B. Trigleth
The issues raised on direct appeal stemmed, primarily, from the fact that juror Lillie B. Trigleth attended the same church as Marilyn Green's mother. Trigleth had realized the fact after trial proceedings had begun. (See Porter, 111 Ill.2d at 397, 95 Ill.Dec. 465, 489 N.E.2d 1329.) The fact became generally known only after the jury had reached its verdict. (Porter, 111 Ill.2d at 397-98, 402, 95 Ill.Dec. 465, 489 N.E.2d 1329.) Before dismissing the jury, the trial judge questioned Trigleth as to whether she deliberated impartially. The trial judge was satisfied that she had and therefore determined defendant was not denied a fair trial. (See U.S. Const., amend. VI; Porter, 111 Ill.2d at 396-407, 95 Ill.Dec. 465, 489 N.E.2d 1329.) A majority of this court agreed. Porter, 111 Ill.2d at 405, 95 Ill.Dec. 465, 489 N.E.2d 1329.
Defendant again challenges Trigleth's jury participation. He concedes the issue was decided previously and would normally be barred as res judicata. Defendant urges, however, that we should ignore the bar to consider Trigleth's newly generated statement revealing how well she knew the Green family and Marilyn Green particularly. See Thompkins, 161 Ill.2d at 158, 204 Ill.Dec. 147, 641 N.E.2d 371 (noting that "[p]rinciples of fundamental fairness * * * will support relaxation of the res judicata and waiver doctrines when appropriate").
On direct appeal, this court determined that defendant had properly raised the issue of Trigleth's participation in his post-trial motion. (Porter, 111 Ill.2d at 403-04, 95 Ill.Dec. 465, 489 N.E.2d 1329.) But defendant failed to carry the burden there of establishing the fact of Trigleth's alleged bias. (Porter, 111 Ill.2d at 404, 95 Ill.Dec. 465, 489 N.E.2d 1329.) Defendant neither subpoenaed Trigleth nor generated her affidavit to reveal how well she knew the Green family or Marilyn Green particularly. Porter, 111 Ill.2d at 403, 95 Ill.Dec. 465, 489 N.E.2d 1329.
The concept of fundamental fairness escapes precise definition. (See People v. Flores (1992), 153 Ill.2d 264, 279, 180 Ill.Dec. 1, 606 N.E.2d 1078 (noting that fundamental fairness concerns are similar to the "cause and prejudice" test applied by Federal courts evaluating procedurally defaulted claims in habeas corpus proceedings); People v. Teague (1992), 228 Ill.App.3d 855, 857 n. 2, 171 Ill.Dec. 48, 593 N.E.2d 868; People v. Yates (1991), 223 Ill.App.3d 110, 116, 165 Ill.Dec. 625, 584 N.E.2d 1059 (specifically defining fundamental fairness against the same "cause and prejudice" test).) That, of course, benefits post-conviction petitioners who seek review of procedurally defaulted claims. The answer to whether it is fundamentally fair to review such a defaulted claim turns upon the particular circumstances of each case. But though, to that extent, the concept is flexible, its application requires, at a minimum, some identifiable reason.
The generation of Lillie B. Trigleth's sworn statement is not reason enough. This court already determined that the time for presenting that evidence was during the post-trial hearing. The only reason for finding that it would be unfair to preclude consideration of Trigleth's jury participation anew would be our disagreement with this court's earlier treatment of the issue. Fundamental fairness does not dictate, here, that the res judicata bar to addressing Trigleth's participation can be excused.
Ineffective Assistance of Appellate Counsel
Defendant claims his appellate counsel failed to contend on direct review that death was an inappropriate sentence. Had counsel done so, defendant insists, this court would have mandated resentencing. That *977 conclusion rests on an observation that, recent to the time of the direct appeal, other juries had spared double murderers from death.
Defendant's claim of ineffective assistance of appellate counsel fails when measured, as above, against the requisite standard for assessing prejudice. (See People v. Johnson (1993), 154 Ill.2d 227, 233-34, 182 Ill.Dec. 1, 609 N.E.2d 304.) Essentially, the test is whether, but for appellate counsel's failure, defendant's sentence would have been reversed. See Johnson, 154 Ill.2d at 234, 182 Ill.Dec. 1, 609 N.E.2d 304.
The fact that other double murderers did not receive death sentences provides no basis to conclude that this court would have vacated defendant's sentence had it been challenged. A death sentence, of necessity, rests on the particular aggravating and mitigating circumstances found in each individual case. (See Ill.Rev.Stat.1987, ch. 38, par. 9-1(c).) And the proportionality review underlying defendant's ineffectiveness claim is not itself constitutionally mandated. Pulley v. Harris (1984), 465 U.S. 37, 42-44, 104 S.Ct. 871, 875-76, 79 L.Ed.2d 29, 35-36.
When aggravating and mitigating factors are assessed properly, the penalty imposed cannot be disturbed. (See People v. Walker (1986), 109 Ill.2d 484, 506, 94 Ill.Dec. 530, 488 N.E.2d 529.) There is nothing in the record to suggest that the trial judge here did not properly consider those factors. To conclude that this court would have vacated defendant's sentence had its propriety been challenged would amount to factoring arbitrariness into the consideration of prejudice. That we may not do. See Strickland, 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
For the above reasons, we affirm the judgment of the circuit court. We direct the clerk of this court to enter an order setting Tuesday, May 9, 1995, as the date on which the sentence of death, entered by the circuit court of Cook County, shall be carried out. Defendant shall be executed in the manner provided by law (Ill.Rev.Stat.1991, ch. 38, par. 119-5). The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.
Affirmed.