Marion F. Winn, Administrator, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company et al., Appellants.

1. EVIDENCE—*what essential to overcome prima facie proof of ordinance.* To overcome the *prima facie* case made by the introduction of a competent pamphlet showing the ordinance in question, it is not sufficient to cast a doubt upon the question of the time of the adoption of such ordinance but it is necessary to show that it was not in fact adopted at the time indicated by the pamphlet.

2. CONTRIBUTORY NEGLIGENCE—*what does not constitute, in times of peril.* A person in imminent peril is not required by law to exercise the same presence of mind and degree of care which an ordinarily prudent man would exercise under ordinary circumstances.

3. CONTRIBUTORY NEGLIGENCE—*when failure to look and listen does not constitute, as a matter of law.* If the view of tracks is obstructed, the question as to whether a failure to look and listen is contributory negligence, is one of fact to be determined by the jury from all the facts and circumstances in evidence.

4. EVIDENCE—*what competent to show expectancy of life.* Standard life tables may properly be admitted in evidence to establish the probable duration of life, where such element is proper to be considered in a case.

5. JUDICIAL NOTICE—*of what taken.* Judicial notice will be taken that Dr. Wigglesworth's tables of life expectancy are standard.

6. PLEADING—*what admitted by general issue.* The plea of the general issue admits the character and capacity in which the defendant is sued.

7. VERDICT—*what does not establish that amount was determined by averaging individual computations.* The finding in the jury room of a paper in the handwriting of one of the jurors containing computations, indicating that the amount of the verdict returned had been arrived at by adding together twelve widely varying amounts and then dividing the total by twelve, is not sufficient to overturn the verdict in the absence of evidence that each juror agreed to be bound by such amount thus determined and afterwards abided by such agreement.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Edgar county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the November term, 1907. Affirmed. Opinion filed April 21, 1908.

GEORGE B. GILLESPIE, for appellant; L. J. HACKNEY, R. L. McKINLEY, H. S. TANNER and HAMLIN & GILLESPIE, of counsel.

F. T. O'HAIR and J. E. DYAS, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by appellee as administrator of the estate of James R. Shively, deceased, against appellants for the recovery of damages for wrongfully causing the death of said Shively.

At the close of the plaintiff's evidence in chief and again at the close of all the evidence, motions to direct a verdict for the defendants were overruled by the court. The jury returned a verdict against both of defendants and assessed the plaintiff's damages at $5,400. The court overruled a motion for a new trial and rendered judgment upon the verdict. To reverse said judgment this appeal is prayed.

The first count of the declaration charges that the defendant, the Cairo, Vincennes & Chicago Railway Company, was the owner of a railway; that defendant, the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, was engaged in operating the same under and by virtue of a certain lease or operating contract, and that the death of Shively was caused by the negligence of the defendants in failing to maintain either a flagman or gates at the crossing of said railway with Front street in the village of Kansas.

The second count charges that the former company was the owner of said railway; that the latter company then was and had been for many years prior thereto operating the same with the consent and knowledge of the former company, and that the deceased was killed as the result of the defendants running a train over said crossing at a rate of speed prohibited by an ordinance of the village of Kansas. A

plea of the general issue was interposed by both defendants.

The evidence discloses the following facts: Front street runs north and south through the village of Kansas and the railway of the defendants crosses said street nearly at a right angle. Immediately north of the crossing was an electric gong which was operated by the telegraph operator at the station about 800 feet west of the crossing. The deceased, a farmer, aged fifty-nine years, lived upon a farm near Kansas and visited the village several times a week and when going to and therefrom usually crossed the railway of the defendants on Front street. On the afternoon of February 10, 1905, while returning home in an ordinary farm wagon loaded with lumber and drawn by a team of young horses, he attempted to cross the railway at said crossing, but failing to notice the approach of one of appellant's trains from the west his wagon and team were struck thereby and he was thrown out of the wagon and killed. That the train was at the time running at the rate of forty miles an hour is not disputed by appellants but it is insisted that the court erred in admitting in evidence a purported ordinance of the village of Kansas which prohibited the running of passenger trains through the village at a rate of speed in excess of ten miles per hour. On the trial appellee introduced and the court admitted in evidence a printed pamphlet containing the speed ordinance in question upon the first page of which pamphlet appeared the following words: "Revised ordinances of the Village of Kansas, Edgar County, Illinois. Revised and compiled by order of the Board of Trustees by R. S. Dyas, City Attorney, 1905." Under section 4, article V of the Cities, Villages and Towns Act, this constituted sufficient *prima facie* proof of the passage and legal publication of the ordinances as of the date mentioned in such pamphlet. Rev. Stat. 1905.

Appellee also offered in evidence what purported

to be the original copy of the ordinance which was identified by the village attorney as that which was published in the pamphlet. Upon the back of said copy there was written: ''Passed and approved this 7th day of March, 1907. William Juntgen, president of the Board of Village Trustees. Attested: Clyde L. Smith, Village Clerk.''

It is urged that the indorsement upon the original ordinance showed that the same was passed after the present cause of action had arisen, and that such proof was sufficient to overcome the *prima facie* case made by the introduction of the pamphlet. The evidence fails to show when or by what authority the indorsement in question was made, or that William Juntgen was ever president of the board of trustees, and it was therefore incompetent and ineffective for any purpose. To overcome the *prima facie* case made by the introduction of the pamphlet it was not sufficient to cast a doubt upon the question of the time of the adoption of the ordinance but it was necessary to show that it was not in fact adopted at the time indicated by the pamphlet. C. & A. Ry. Co. v. Wilson, 225 Ill. 50. The introduction of the pamphlet sufficiently established the existence of the speed ordinance at the time of the accident, and we think that the jury were warranted in finding not only that appellants were guilty of violating the same at the time the deceased was killed but that had it not been for such violation the collision would not have occurred.

It is contended that a verdict in favor of appellants should have been directed for the reason that the evidence failed to show that the deceased was in the exercise of due care for his own safety at the time he was killed; that on the contrary the only reasonable inference that can be drawn from the facts disclosed by the evidence is that he was guilty of contributory negligence.

There is evidence tending to show that the crossing was about 400 feet north of the main east and west

street of the village; that on the west side of Front street were a number of buildings and that on the south side of the railroad track there was a line of buildings for a distance of at least 800 feet; that a person driving north on Front street after leaving the main street was unable to see a train approaching from the west until he had arrived within some thirty feet of the track and that on the day of the accident the weather was cool, the ground rough and frozen and that the wind was blowing; that the deceased started at a blacksmith shop on Front street about 225 feet south of the crossing; that the horses at first trotted and then slowed into a walk. The evidence as to the actions of the deceased when he reached a point where he could see the train approaching is conflicting. One witness testified that he looked to the east and then to the west and another that he looked to the east but that the witness could not remember whether he looked in any other direction or not. All agreed that when his horses were almost upon the track he tried first to urge his horses over the track and then to pull them back. When he arrived at the track and first saw the train approaching the deceased was undoubtedly surprised at the perilous position in which he found himself and had no time for deliberation as to what it was best to do under the circumstances. A person in imminent peril is not required by law to exercise the same presence of mind and degree of care which an ordinarily prudent man would exercise under ordinary circumstances. In this state of the evidence we are not prepared to say that the conduct of the deceased as he approached the crossing amounted to contributory negligence as a matter of law. The issue, therefore, was one of fact for the jury in the determination of which both the failure to look and listen, the existence of obstruction to the view and all other surrounding circumstances and the fact that the deceased had the right to assume that the village ordinances would be

complied with, were proper to be considered. While obstructions to the view or hearing may require greater care and attention to ascertain whether a train is approaching, they some times have a tendency to render such care and attention unavailing. The finding of the jury upon this issue was not manifestly unwarranted by the evidence, and we are, therefore, not at liberty to disturb the same.

As tending to prove the probable expectancy of the continued life of the deceased had he not been killed by the accident, the court admitted and there was read in evidence what are known as Dr. Wigglesworth's tables of life expectancy. Notwithstanding counsel for appellants objected to questions propounded to one J. W. Howell, a practicing attorney in good standing, tending to show such fact, they now inconsistently urge that the table was incompetent because it was not shown that it was standard. Such contention is without force or merit. The probable duration of the life lost is an element to be considered in assessing the damages in cases of the present character and as bearing on such question standard life tables may properly be admitted in evidence. Calvert v. Springfield L. & P. Co., 231 Ill. 290. The evidence of Howell tended to show that the table was standard. Moreover, the table is so well known to and frequently used by the profession that courts may properly take judical notice of the fact that the same is standard.

It is contended that the court erred in admitting in evidence over objection of appellants secondary evidence of a certain deed conveying the railway in question. Any error in this particular could not have been prejudicial for the reason that in the absence of special pleas neither the character nor capacity in which the defendants were sued was in issue in this case. McNulta v. Lockridge, 137 Ill. 270; Penn. Co. v. Chapman, 220 Ill. 428; Chicago Union Traction Co. v. Jerka, 227 Ill. 95.

Counsel seek to impeach the verdict on the ground

that after the jury had returned their verdict and had been discharged a paper was found in the jury room containing computations in the handwriting of one of their number indicating that the amount of the verdict returned had been arrived at by adding together twelve widely varying amounts and then dividing the total by twelve, the quotient being approximately the amount of the verdict returned. In the absence of further proof that each juror agreed in advance to be bound by the amount thus determined and afterward abided by such agreement, the facts shown were insufficient to warrant the court in disturbing the verdict.

We have considered all other grounds urged for reversal and find no prejudicial error. The damages awarded we do not deem excessive.

The judgment of the trial court is affirmed.

*Affirmed.*