Stuart E. Kelley, Appellee, v. Irwin Call, Appellant.

Gen. No. 9,441.

Opinion filed October 26, 1944. Released for publication November 21, 1944.

FRANK K. LEMON, of Clinton and COSTIGAN, WOLLRAB & YODER, of Bloomington, for appellant.

JOHN F. PEARL, of Clinton, J. L. MCLAUGHLIN, of Sullivan and GROVER W. WATSON, of Farmer City, for appellee; PAUL STONE, of counsel.

MR. JUSTICE RIESS delivered the opinion of the court.

The defendant Irwin Call has appealed from a judgment of the circuit court of DeWitt county in the sum of $4,800 entered against him upon the verdict of a jury in favor of plaintiff appellee, Stuart E. Kelley. The suit was an action at law in tort to recover damages for personal injuries alleged to have been sustained by the plaintiff as the proximate result of being struck by a motor car negligently driven by the defendant at or near a crosswalk in Farmer City, Illinois while the plaintiff, a pedestrian, was crossing the street in the exercise of due care and caution for his own safety.

While there was some material conflict in the testimony as to the manner in which the plaintiff was struck and injured by the defendant's car at the westerly

intersection of Main and Water streets in said city, it does not appear to this court from the record that the verdict was contrary to the manifest weight of the evidence upon either of the factual questions of negligence or due care or as to the manner, extent or proximate cause of the plaintiff's injuries.

The appellant has assigned and argued several errors, and we will consider those which were argued in the briefs of the parties and upon oral argument before this court. The trial judge, who heard the case, upon overruling defendant's motion for a new trial and entering judgment on the verdict, filed a written opinion appearing in the abstract in which he carefully considered and passed upon the alleged errors set forth in the motion.

Following due return of the jury's verdict into open court, it appeared that the court bailiff handed the instructions and exhibits which had been taken to the jury room, to the presiding judge; that the bailiff found sheets of paper upon a table in the jury room after the jurors had been discharged, with figures showing thereon certain memoranda indicative of their respective votes as to the amount of the verdict; which sheets were left with the clerk at the instance of the judge. Upon hearing the motion for a new trial, these memoranda sheets showing added columns and amounts were produced with the evidence of the bailiff and clerk and the verified statements of the jury foreman, Roscoe Sumner; the latter's affidavit being offered by the plaintiff. The court expressed the view that the jury had apparently computed an average amount equaling the gross sum divided by twelve. The foreman's affidavit recited that there was no agreement or understanding by the jury to the effect that they would be bound by the computation and that the average was arrived at without any agreement that the same would be the final verdict which was ultimately agreed upon by the jury; that after discus-

sion and unanimous vote to find the issues for the plaintiff, the amount of the verdict was discussed and before a vote was taken on slips of paper, witness "as foreman of the jury, explained to them specifically that the purpose of writing down these amounts was merely to arrive at a starting point and that it was not in any manner binding upon the jury and further explained to them that they were not voting upon the verdict but merely expressing each juror's opinion"; that later, after fully discussing the question of allowing to the plaintiff the sum of $4,800, "that verdict was finally agreed upon as to the verdict by all of the jurors and all of them signed the same freely and voluntarily."

It has been held by the Illinois Supreme Court that in the event of a prior agreement to arrive at a verdict by averaging the total amounts and thus obtaining a quotient verdict so agreed upon in advance, the verdict is void. *Illinois Cent. R. Co. v. Able,* 59 Ill. 131. In that case and in the case of *Groves & S. R. R. Co. v. Herman,* 206 Ill. 34, 69 N. E. 36, and *City of Pekin v. Winkel,* 77 Ill. 56, it was also held that the jury may experiment in considering said amounts if there is no prior agreement to be bound by the result as a quotient verdict. In the instant case, one of the suggested amounts was $12,000; two were $8,000 and the others were various lessor amounts, the total of which, divided by twelve, was $4,800. From this, an inference might well be drawn that such an agreement for a quotient verdict preceded the final agreement upon a verdict. As the trial court pointed out, however, the positive affidavit of the foreman to the contrary should prevail over the above inference to be drawn from the unexplained paper memoranda and that the conduct of the jury, as explained by its foreman, did not vitiate the verdict. Under the well-settled law in this State, the affidavit of a jury member may be used in support of but not to impeach or

controvert a verdict. *City of Chicago v. Dermody,* 61 Ill. 431; *Kelly v. Chicago, R. I. & P. R. Co.,* 175 Ill. App. 196. See also *Ruiter v. Knudson,* 318 Ill. App. 211, 47 N. E. (2d) 534 and citations therein.

The further point raised by the appellant concerns the fact that some written memoranda was also found in the jury room indicating the specific amount of certain items, including physicians' charges and other costs of treatment, incurred as an element of damages alleged to have been sustained by the plaintiff. It is argued therefrom that the amount of these items had been taken by some juror or jurors from the jury box to the jury room. It has been held to be improper for an attorney in arguing the case to have jurors take pencil and paper and write down calculations which are taken to the jury room and used in considering their verdict. *Indianapolis & St. L. R. Co. v. Miller,* 71 Ill. 463, 472; *Ettelsohn v. Kirkwood,* 33 Ill. App. 103. There was no evidence tending to show that any suggestion was made by counsel or that if such notes were made in the jury box, they were not made of the juror's own motion. The trial court remarked that no one saw any juror make notes during the trial and that the memorandum was written upon the same kind of scratch paper as that furnished to the jury at the time of its retirement; that so far as the court knew, it appeared that the memorandum was made in the jury room and not at the request or suggestion of any counsel. From the evidence of what transpired, we find and hold that the trial court properly ruled that no error appeared in the record in the conduct of the jury. In so holding, we do not depart from the rule that a quotient verdict, after an agreement by jurors to arrive at the amount of the verdict by aggregating the vote of all jurors and dividing the result by twelve, is void; nor do we hold that memoranda made in the jury box for use in the jury room at the request or

suggestion of counsel and not of their own volition is proper.

Another assignment of error related to a certain answer made upon cross-examination by one of plaintiff's witnesses, Doctor Ziegler, concerning an alleged statement against interest made by the defendant Call at the office of Doctor Kelley shortly after the time of the latter's injury, to the effect that Call had hit him, that it was Call's fault, that he had insurance to take care of it and wanted Kelley taken care of. It appears from the record that before the witness Ziegler was examined, defendant's counsel stated to the court out of the hearing of the jury that said witness might make some statements concerning such insurance and plaintiff's counsel stated that the witness had been cautioned and would make no reference thereto in direct examination and that it would not be brought out unless defendant's counsel did so on cross-examination. It was not disclosed nor referred to by plaintiff's counsel nor in the direct examination of any witness. The witnesses, Dr. Ziegler, Nile Mitchell, a son-in-law and Mrs. Crystal Kelley, wife of Dr. Kelley, were all present in the office at the time and all testified on direct examination that defendant Call had said "that he had hit him and wanted him taken care of;" the exact answer of Dr. Ziegler being that defendant had said "I hit him. It was my fault. I want him taken care of." Defendant Call stated upon cross-examination that (Abst. 76) "I remember saying I hit him. I don't remember saying it was my fault and I want him taken care of. I don't know if I told them to take care of him." From a clear preponderance of the evidence, it appears that the above statements had been made by defendant Call, who testified further as to the manner in which plaintiff was injured, when called for cross-examination under section 60 of the Civil Practice Act [Ill. Rev. Stat. ch. 110, par. 184;

Jones Ill. Stats. Ann. 104.060], that he resided at Waynesville, was an automobile mechanic, aged 34 years and owned a 1940 Packard sedan, weighing 3640 pounds, on January 5, 1942; that "I was driving east on Water street on the above date in Farmer City, approaching Main street from the west. I pulled my car partly to the north side of the street north of the center line. I saw no one as I approached Main street. As I practically came to a stop, I saw Dr. Kelley. My foot slipped off the clutch, the car lunged forward and struck Dr. Kelley. I had on 5-buckle overshoes. My dog was in the back seat. I couldn't see him strike me, but I could feel it. I was practically on the west crosswalk north and south at that intersection. Mr. Kelley fell on the right fender and slid off as I stopped. He was out of my sight. I got out and pulled him from under the car and took him to Dr. Kelley's office. I was there when Dr. Ziegler and Mrs. Kelley came." Plaintiff was injured about 7 o'clock p. m. and the conversation in question took place shortly thereafter in Dr. Kelley's office a few doors north of the crossing where he had been taken and was given emergency treatment by Dr. Ziegler. The assigned error is based upon witness Ziegler's allegedly unresponsive answer to questions by defendant's counsel, restated by the court after considerable hesitancy by the witness, as to "whether or not you told substantially all about the case that you know" and the statement containing reference to insurance by the defendant was then made by the witness. A statement of this kind made or elicited by the plaintiff or volunteered by his witness will ordinarily constitute prejudicial error. If disclosed upon cross-examination by defendant's counsel, it is dependent upon whether or not the answer may be fairly deemed to have been elicited by the questions of defendant's counsel and not as a mere volunteer statement by the witness. From the abstract, it appears that while cross-examining the witness, defend-

ant's counsel asked the following specific questions: "Doctor, have you told everything you know about the case? A. Well, now what do you mean? Q. I mean substantially have you gone over practically everything that you know about it? Mr. McLaughlin: (of plaintiff's counsel) Object to the question. The Court: He may answer. A. You take in a whole lot of territory. Q. I presume I am, but I am intending to. I want to know anything else about the case that you know of that you did, and if so, I would like to have you tell me. Mr. Watson: Object unless he limits it to the treatment. The Court: He can answer the question whether he knows. The question should be a little more specific. Q. I think that is a double question, your Honor. Have you told everything about the matter in your direct examination pertaining to your treatment and his condition and what you had to do with it? A. He is kind of asking a question that's kind of broad, your Honor. The Court: You can answer it yes or no whether you think you have, in your best judgment, or whether you haven't. Mr. Watson: Object to the question as being entirely too general. Q. This is cross examination—The Court: That's right, and that is the theory upon which it is permitted. A. I told him about his office—The Court: You don't have—all you have to do is——A. But I want to figure out what I said. Q. Yes, but we don't want you to figure out loud. A. Well, yes, I know—and when I asked Kelley, I went in—give me a little time—I says, What happened? He said I got hit by a car—The Court: Don't make your observations out loud. Q. I move to strike that statement. The Court: That will be stricken out. Q. The question was asked—The Court: The question is whether or not you told substantially all about the case that you know. All you have to do is say whether you think you have or haven't. A. I think I have, all except one thing. Q. What is that, and what was that about? A. I am

going to go back a little bit, with I says, How did this happen, Kelley? and Mr. Call says, I hit him; it was my fault, and I have got insurance to take care of it, and I want him taken care of—Mr. Lemon: I move to withdraw a juror and continue the case. The Court: Take the jury out. (Thereupon the jury was removed by the bailiff from the courtroom).'' At the request of defendant's counsel, the record was then made to show the conversation preceding the testimony of the witness Ziegler relating to the subject of insurance. The court stated that Mr. Watson had said, in substance, that he wouldn't bring it out on direct examination and that he then said ''Unless you bring it out on cross examination, or something like that. That's what I remember.'' Following further discussion and remarks by court and counsel, the court ruled at length in denial of the defendant's motion. The court then made the inquiry: ''Do you want the Court to instruct the jury that they are to disregard that, or do you want that subject ignored?'' ''Mr. Lemon: I think any further reference—The Court: There will be no instruction of that kind unless you want it made. I will make no reference at all, unless counsel desire it.''

Without analyzing the specific cases and factual situations which have arisen in other cited cases passed upon by courts of review of this State, it may be said that as a general rule of law in Illinois, it is held to be reversible error for the plaintiff to make disclosure to the jury through his testimony or in his argument, of the fact that the defendant carries liability insurance. In a number of States, admissions made by a defendant wherein it appears as a part of the statement that he is insured, the entire statement becomes admissible in evidence. 56 A. L. R. 1448; 74 A. L. R. 856; 95 A. L. R. 398 and numerous citations therein. That question does not seem to have been directly passed upon by any Illinois court of review. It is also a recognized

rule of law in this State that when the fact of insurance is elicited or disclosed by the defendant or his counsel, he will not be allowed to take advantage of the situation to procure a new trial or a reversal on the grounds of prejudice. *Reitz v. Yellow Cab Co.,* 248 Ill. App. 287. In the present case, as pointed out by the trial judge in ruling upon the motion for a new trial, the fact as to insurance was disclosed by defendant's cross-examination of the witness. After insistent cross-questioning as to whether or not he had stated all that he knew about the case, by the first quoted question of defendant's counsel and as later repeated by the court, the witness finally repeated the content of his prior answer on direct examination and quoted *verbatim* defendant's entire statement, including the element concerning his insurance protection. This had followed the added ruling of the court that the witness must reply to the general question. It may be said in passing that the above general question, frequently asked, is ordinarily intended to preclude the witness from giving any additional affirmative testimony upon redirect examination as to facts not disclosed upon direct or cross-examination. However, it has the vice of leaving to the judgment of the witness what is competent or not competent testimony and is in effect a broad invitation to him to state any matter which he may deem to be pertinent, material or relevant to the issues. Here, the court, who heard the witness testify and saw and observed his demeanor and the surrounding circumstances under which he was testifying, held that the facts did not show bad faith on the part of the witness or that he was looking for an excuse or opportunity to make the statement, but was inclined to believe from his consideration of the facts and a careful rereading of the record in relation thereto, that "the witness thought he was supposed to tell everything he knew." Numerous cases are cited and sought to be applied to the circumstances of this case by respective

counsel but no parallel factual situation is cited and none has come to the attention of this court. Ordinarily, cross-examination of a witness who is not a party to the suit should be confined within the scope of the direct examination, with reasonable latitude for testing the knowledge, memory or credibility of the witness. It is not intended to cover any and everything that the witness "may know about the case." The answer of the witness here was as responsive as any other answer could have been under the circumstances. The hesitancy of the witness and the repeated objections of plaintiff's counsel to the question which should have been sustained by the trial court, appear to this court to have elicited that part of the defendant's statement complained of under circumstances showing neither bad faith on the part of the witness nor of the plaintiff, who had avoided that subject in the direct examination. The witness was repeatedly pressed in the cross-examination to answer whether he had told all he knew, and upon answering that he had told all he knew but one thing, defendant's counsel then insisted upon him stating "What is that and what was it about." The fault, if any, was that of the defendant. The trial court did not err in ruling under the above circumstances that the answer elicited by the defendant on cross-examination did not constitute prejudicial error.

Some reference is made by appellant to argument of appellee's counsel in closing the case. Most of the objections thereto are now raised for the first time upon appeal and not upon objection and ruling thereon by the court, made and preserved in the record during the trial. We hold that such objections were thereby waived. *Peterson v. Pusey,* 237 Ill. 204, 86 N. E. 692. The statement to which an objection was made and preserved was not, in our opinion, of a nature that would influence the jury or that constituted reversible error.

The principal remaining assignment of error concerns two given instructions for the plaintiff. One instruction was to the effect that the jury are the judges of the credibility of the witnesses and of the weight to be given to their testimony and if they believe that any witness has wilfully sworn falsely to any "material fact or facts" in the case, they are at liberty to disregard such testimony unless corroborated by other testimony, etc. It is pointed out by the court that a similar rule is substantially stated in an instruction given for the defendant, wherein he has used, instead of the words "material fact or facts" the words "Material point." Defendant may not take advantage of an error for the purpose of procuring a reversal or new trial where the same error, if it is an error, appears in an instruction offered and given in his own behalf. (*Mowery v. City of Mounds,* 245 Ill. App. 338, 343.)

We hold that rule to be applicable to the specific assignment of error raised as to said instruction. The remaining instruction to which objection is made instructs the jury that if they should find from the preponderance of all the evidence in the case that the plaintiff is entitled to recover, then it will become the duty of the jury to assess plaintiff's damages and the court instructs the jury that the measure of the plaintiff's recovery in such case would be such amount as will fairly and justly compensate him for the damages he has sustained as a result of the injuries in question. It is expressly set forth and pointed out in one of the given instructions that all of the court's instructions are to be considered by the jury as a connected series. The jury was further instructed that if, from the evidence in the case, they find that the plaintiff was not entitled to recover, then they would have no occasion to at all consider the character or extent of the plaintiff's alleged injuries or damages, whether serious or slight, and in the instruction as to the form of the verdict, that

if they find for the plaintiff and against the defendant, they were to assess plaintiff's damages in the sum of ———— dollars, inserting in the blank such amount, if any, as you may find from the evidence plaintiff is entitled. Specific instructions concerning the necessity of proof by a preponderance of the evidence, of the material issues and elements of negligence, due care and of proximate resultant damages to the plaintiff are also recited and set forth in other given instructions. A further cautionary instruction was given, setting forth that the fact that the court has instructed the jury respecting the measure of damages which may be allowed the plaintiff in case they find that he is entitled to recover under the evidence and these instructions, and the fact that defendant's counsel may have discussed the subject in argument before them is not to be taken or regarded by them as implying in any way that either the court or said counsel are of the opinion or are admitting that the plaintiff is entitled to an allowance of damages in any amount whatsoever. The instruction complained of could not have affected the primary question of liability and the amount of the verdict is well within the evidence as to damages alleged and proven and is not excessive. Nothing appears to fairly indicate that the jury went outside of the record in considering and assessing the amount of damages. While the instruction complained of, standing alone, contains error; when read and considered in a connected series with the other instructions, as the jury was expressly instructed to do by the court (*Cosmo v. Seegers,* 307 Ill. App. 187, 30 N. E. (2d) 123, *Lester v. Bugni,* 316 Ill. App. 19, 44 N. E. (2d) 68), and when viewed as ordinary men acting as jurors would view and consider them, the error is rendered harmless. (*Reivitz v. Chicago Rapid Transit Co.,* 327 Ill. 207, 158 N. E. 380.) We are in accord with the holding of the trial court that when so considered, the jury was fairly instructed as to the law applicable

to the evidence and issues presented by the pleadings and that the instructions contained no prejudicial nor reversible error.

Defendant appellant further contends that the amount of the verdict and judgment was excessive. There was evidence of serious physical injuries to the plaintiff; especially to his head and one of his knees. The evidence includes that of semi-consciousness and bleeding from the ear and nostrils when brought into the physician's office; of a basal fracture to the skull; severe and recurrent headaches; painful injuries to the chest and back; of subsequent pneumonia while he was still a patient in the hospital; some conflicting testimony of physicians as to whether or not the injuries were partially permanent; testimony as to pain and suffering and of the expense of treatment by several physicians and specialists; cost of hospitalization and numerous X-rays. We are in accord with the holding of the trial court that the amount of the damages awarded was not excessive.

Although the case was closely contested and the record is not entirely free from error, we hold that a fair trial was had, that substantial justice was done between the parties and that no reversible error appears in the record. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*