NANCY EPPING *et al.*, Plaintiffs, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellant (Nancy Epping, Plaintiff-Appellee).

First District (3rd Division) No. 1—99—3257

Opinion filed July 26, 2000.

Clausen Miller, P.C., and Johnson & Bell, Ltd., both of Chicago (James T. Ferrini and Edward M. Kay, of counsel), for appellant.

Robert A. Clifford and Timothy S. Tomasik, both of Clifford Law Offices, and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Leslie J. Rosen, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

The only matter to consider in this case is whether a $9 million noneconomic damages award by a jury falls outside the range of fair and reasonable compensation. Commonwealth Edison contends the award, standing alone or in comparison to awards in other cases, is excessive. It requests a new trial or a remittitur of $5 million. We affirm the jury's verdict.

## BACKGROUND

One sunny Thursday—April 18, 1996—Nancy Epping (Epping) was driving south on Route 31 toward Algonquin when, in seconds, her life changed forever.

Mark Schleehauf, a Commonwealth Edison (Edison) employee, was driving his Edison "stake truck" north on Route 31. He just finished eating a pear and leaned over to throw away the core. In that

split second he failed to see the car in front of him slow to a stop to make a left-hand turn into the YMCA. When Schleehauf looked up it was too late. He tried to swerve to the right, but he hit the car, which was driven by Reverend James Bensing. Bensing's car was forced over the centerline and into oncoming southbound traffic. Bensing's car plowed into Epping's car.

Epping sustained serious injuries, including: multiple open fractures of the right proximal tibial plateau (in the area of the knee); an open fracture of the right foot; a large wound over the top of the right foot; a closed fracture of the left ankle; a fractured left wrist; and a fractured and dislocated left hip with cracked pelvis. Epping had to be extricated from her car and air-lifted by helicopter to Lutheran General Hospital.

Edison admitted liability for the accident. Epping's suit against Edison proceeded to trial on the issue of damages.

The jury learned that when the accident occurred Epping was 49 years old, had been married for 28 years, was the mother of one daughter and a grandmother of one. Epping was a part-time teacher of anthropology at McHenry County Community College and the executive director of the Elgin Public Museum. She traveled extensively as the president of the Midwest Museum Conference. She had been named the Business Woman of the Year and the YWCA Woman of the Year. She enjoyed sailing and reading.

After the accident, Epping's injuries caused her to undergo 32 operations and procedures between 1996 and 1999. The jury viewed photographs of Epping's severely deformed leg and foot. It saw a video depicting a day in Epping's life.

The jury learned that Epping is unable to walk and needs assistance getting out of bed, getting into a chair, or getting onto the toilet. It learned she requires assistance attending to matters of personal hygiene. She can no longer drive a car and, because her left wrist joint has been "fixed" in place, she has difficulty maneuvering her own wheelchair. Epping's right leg is called "flail leg" and cannot support her weight. Doctors are optimistic that with further reconstructive surgery Epping might have the future ability to independently "ambulate" around the interior of her home with the aid of a walker or by holding on to furniture. But there is still the potential that Epping's right leg will have to be amputated.

Despite a number of surgeries, Epping continues to experience difficulty with her left hip. Epping will never be able to return to work, independently ambulate outside her home, or be able to perform the normal tasks of living—cleaning, cooking, or taking care of household chores. Her life expectancy is 32 years.

After receiving all the evidence and the instructions, the jury awarded Epping $4.5 million for past and future economic damages, along with $9 million for noneconomic damages, which consisted of $2,250,000 each for disability, disfigurement, and past and future pain and suffering.

Edison filed a posttrial motion requesting remittitur or, in the alternative, a new trial. The motion was denied by order of the court entered August 17, 1999. On September 15, 1999, notice of appeal was filed.

## DECISION

Edison challenges the propriety of awarding Epping $9 million in noneconomic damages. It asks for a remittitur of $5 million or, in the alternative, a new trial on damages.

Edison contends $9 million falls outside the realm of fair and reasonable compensation. It reaches this conclusion mainly on its belief that the award is disproportionately high when viewed in light of awards given in other cases where, it says, the injuries were as severe as or more severe than the injuries sustained by Epping in this case. Edison contends this court is "required" to compare the noneconomic damages award in this case to awards handed down in other cases.

■ Edison misstates the standard by which we review a damages verdict. The power to order a remittitur of damages—a long recognized and accepted part of Illinois law—should be employed only when an award falls outside the range of fair and reasonable compensation, appears to be the result of passion or prejudice, or is so large that it shocks the judicial conscience. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411-12, 689 N.E.2d 1057 (1997). Remittitur should not be applied when the award "falls within the flexible range of conclusions which can reasonably be supported by the facts." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 470, 605 N.E.2d 493 (1992).

●2 There is no mathematical formula for deciding whether an award is fair and reasonable. Factors that may be considered are: the extent of the injuries suffered and permanency of the plaintiff's condition, the plaintiff's age, the possibility of future deterioration, the extent of the plaintiff's medical expenses, and the restrictions imposed on the plaintiff by the injuries. *Richardson v. Chapman*, 175 Ill. 2d 98, 114, 676 N.E.2d 621 (1997); *Tierney v. Community Memorial General Hospital*, 268 Ill. App. 3d 1050, 1064, 645 N.E.2d 284 (1994).

Courts in this state "have traditionally declined to make such comparisons in determining whether a particular award is excessive." *Richardson*, 175 Ill. 2d at 114. See also *Kopczick v. Hobart Corp.*, 308 Ill. App. 3d 967, 721 N.E.2d 769 (1999). That is, "the clear weight of

Illinois authority has been to reject the 'comparison' concept." *Tierney*, 268 Ill. App. 3d at 1065. As we said in *Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d 199, 207, 668 N.E.2d 8 (1996):

> "Establishing predictability of outcome for people similarly situated has surface attraction, but the courts of this state never have imposed on juries a requirement of conformity in damage awards."

This case is not about an injury to an arm or a leg. It is about the nature and extent of injuries to a particular woman. It is about the life she is required to lead because of the defendant's negligence. We will not compare.

Even if it were necessary or useful to compare verdicts in other cases, Edison's comparison cases do not support its point. Edison chose three Illinois cases from the 1970s and added cases from federal and foreign jurisdictions. Edison ignores more recent Illinois cases in which the awards have been much closer to the award here. See *Drews v. Gobel Freight Lines, Inc.*, 144 Ill. 2d 84, 578 N.E.2d 970 (1991) ($8.3 million wrongful death award upheld); *Dahan v. UHS of Bethesda, Inc.*, 295 Ill. App. 3d 770, 692 N.E.2d 1303 (1998) ($11,962,390 award to 29-year-old stroke victim upheld); *Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d 199, 668 N.E.2d 8 (1996) (award totaling $12 million was not excessive); *Antol v. Chavez-Pereda*, 284 Ill. App. 3d 561, 672 N.E.2d 320 (1996) (award of $4.5 million fell within limits of fair and reasonable).

■Whether remittitur should be granted is a question of law for the court. *Best*, 179 Ill. 2d at 412. But, because the assessment of damages is primarily an issue of fact for the jurors, who apply their combined wisdom and experience, deference must be given to the careful deliberative process of the jury. *Best*, 179 Ill. 2d at 412; *Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d at 207. Put another way, a damages award for a personal injury "must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury and the judgment of the trial court." *Kopczick v. Hobart Corp.*, 308 Ill. App. 3d at 979.

As we have said, jurors, when considering damages, "use their combined wisdom and experience to reach fair and reasonable judgments. We are neither trained nor equipped to second-guess those judgments about the pain and suffering and familial losses incurred by other human beings. To pretend otherwise would be sheer hubris." *Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d at 207.

Admittedly, there is no litmus test for determining when the outer limits of a reasonable jury award are reached. That is why we examine the record for indications that the award was a product of passion or prejudice. That is why we do what judges often are called upon to do— determine whether fairness and rationality have been maltreated.

■ Reviewing the facts and circumstances of this case, there is no question Epping has suffered and will continue to suffer severe debilitating injuries. We cannot agree with Edison's characterization of Epping's injuries as "orthopedic injuries—but that is it."

Although Epping has not, as yet, suffered the loss of a limb, the top inch or more of the tibia bone near the right knee has been removed, resulting in "flail leg." The leg can turn in any direction and can bear no weight. Epping may not be a paraplegic, but her mobility is severely impaired. Any hope of walking independently depends on undergoing more painful surgery.

Epping's left hip also suffered severe trauma. Even after major reconstructive surgeries, the hip joint repeatedly becomes dislocated. The joint is held together with artificial replacement parts and numerous screws. Both the hip and the leg, doctors testified, were competent producers of pain. Epping has been on pain medication, as well as anti-depressants, since the accident.

Edison cannot deny Epping's injuries and surgeries have resulted in severe deformities to her right leg and foot. But it would have us reduce the jury's award because Epping's disfigurements are not readily visible and, consequently, are less repulsive to public eyes. We find no persuasive force in the fact that the disfigurements are capable of being hidden by clothes. Epping must suffer the indignities of these deformities each day—a constant reminder of the pain and suffering she has already suffered and will continue to suffer in the future.

Edison suggests "the enormity of the award" can be readily recognized if we consider the return Epping might expect if she invested her award of damages at the prevailing interest rate. Juries are not asked to reduce future noneconomic damages to present cash value—we see no reason for us to engage in investment analysis or advice.

Finally, we reject Edison's suggestion that a reduction of the damages award in this case might assist businessmen or individuals in determining what constitutes adequate insurance coverage. Our duty is to decide cases, not to assist in coverage planning. This argument, like the "reduction in systemic costs of tort liability" rationale touted in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997), does not inspire principled analysis. As our supreme court said, "[T]he difficulty in quantifying compensatory damages for noneconomic injuries is [not] alleviated by imposing an arbitrary limitation or cap on all cases, without regard to the facts or circumstances." *Best v. Taylor Machine Works*, 179 Ill. 2d at 406.

The record is replete with evidence that supports the jury's award. It cannot be said the award is the product of passion or prejudice. Nor

does it shock our judicial conscience. The $9 million award, therefore, does not exceed a fair and reasonable amount.

## CONCLUSION

For the reasons stated, we affirm the $9 million award for noneconomic damages to Epping.

Affirmed.

CERDA and BURKE, JJ., concur.