JOHN CARROLL *et al.*, Plaintiffs-Appellees, v. PRESTON TRUCKING COMPANY, INC., *et al.*, Defendants-Appellants and Third-Party Plaintiffs-Appellants (A and G Electrical Contractors, Inc., *et al.*, Third-Party Defendants-Appellees).

First District (2nd Division)    Nos. 1—02—3223, 1—02—3604 cons.

Opinion filed June 15, 2004.—Rehearing denied July 21, 2004.

Clausen Miller P.C., of Chicago (James T. Ferrini, Edward M. Kay, Paul V. Esposito, and Agelo L. Reppas, of counsel), for appellants.

Louis Cairo and Michael D. Fisher, both of Goldberg, Weisman & Cairo, Ltd., David A. Novoselsky and Leslie J. Rosen, both of Novoselsky Law Offices, Harlene G. Matyas, of Meachum, Spahr, Cossi, Postel, Zenz & Matyas, and Gary T. Jansen and Misti H. Floyd, both of Cremer, Kopon, Shaughnessy & Spina, all of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

We review a substantial jury verdict in which one of the issues is whether a defendant may attack a verdict through juror affidavits that establish that the jury used a method that yielded a quotient verdict. We affirm.

Defendants Preston Trucking Company, Inc., and Ron Trieb appeal a $3,169,008 jury award for plaintiff John Carroll in a personal injury action. Defendants argue: (1) the trial court abused its discretion by excluding videotape evidence offered to show the nature and extent of plaintiff's injuries; (2) the trial court erred in striking juror affidavits supporting defendants' theory that the jury reached its verdict through an impermissible quotient process; and (3) the verdict was the result of passion and prejudice.

On November 22, 1996, plaintiff was employed as an electrician by A&G Electrical Contractors, Inc., and assigned to work at the Sugar House Project located at 358 West Harrison in Chicago, Illinois. F.H. Paschen Group, Inc., was the general contractor for the project. A&G was hired to install new switch gears, panels and lights at the project. A switch gear is a piece of power equipment that acts as a main distribution center for electricity.

In the afternoon of November 22, plaintiff and his coworkers were asked to unload two switch gears from a truck owned by Preston Trucking and driven by Trieb, an employee of Preston Trucking. When plaintiff and his coworkers arrived at the loading dock, they decided the switch gears, which weighed approximately 2,347 pounds collectively, were too heavy to unload at that particular dock. Trieb agreed to drive the truck to a lower dock. Plaintiff rode in the back of the truck with the switch gears. As the truck crossed a bridge on an incline, the larger switch gear fell on top of plaintiff, injuring his left knee.

Plaintiff was taken to the hospital, where he was diagnosed with ligament damage. Plaintiff underwent several surgeries, including knee replacement surgery. Although the surgeries were successful and later examinations showed plaintiff had recovered from 0 to 130 degrees of motion, plaintiff continued to experience pain and swelling in his left knee. Plaintiff was prescribed compression stockings to alleviate the swelling. Plaintiff's doctor said the injury was permanent. Plaintiff, who was 5 feet 9 inches and approximately 300 pounds at the time of his accident, also was advised to lose weight. Plaintiff was told he could return to light-duty work, preferably in a job that did not require standing for long periods.

On March 14, 1997, plaintiff filed a negligence action against defendants that included a spouse's claim for loss of consortium. Defendants brought a third-party action against A&G and Paschen for contribution. A&G and Paschen were dismissed from this appeal and defendants' claims against them are not at issue.

During discovery, defendants served A&G with a notice to produce all relevant photographs and video surveillance. After discovery was completed but before trial, A&G produced a surveillance videotape of plaintiff taken in the summer of 1999. A&G's worker's compensation carrier had hired a company to conduct the surveillance in connection to a related worker's compensation claim. The videotape spans several days and appears to have been edited. The part at issue was recorded in the late morning and afternoon hours of July 1, 1999. The recording shows plaintiff in the front and back yards of his home, walking without the assistance of a cane, moving a ladder, bending over, operat-

ing a chain saw, using his weight as leverage to remove a tree stump, walking up and down stairs, swinging an ax, picking up and carrying tree branches and pushing a wheelbarrow. Plaintiff's wife, nephew and niece are also shown in the video. The date and times appear in the recording.

Plaintiff moved to exclude the videotape. He argued it was produced after the discovery deadline and defendants could not establish an adequate foundation because the surveillance company went out of business and the cameraman could not be identified. Defendants responded that A&G's failure to timely disclose the tape is not a ground for exclusion because of the prejudice defendants would suffer. Defendants also argued they could establish a foundation for the tape through plaintiff's testimony. The trial court granted plaintiff's motion to exclude the videotape. The court agreed with plaintiff that defendants could not establish an adequate foundation. Defendants again sought to introduce the videotape at trial to impeach plaintiff. The court denied defendants' request.

On February 26, 2002, the jury returned a verdict in favor of plaintiff for $3,169,008 and for plaintiff's wife in the amount of $124,500. Judgment on the award was entered February 27, 2002. On November 25, 2002, the trial court entered an order granting in part plaintiff's petition for costs under section 5—108 of the Code of Civil Procedure (735 ILCS 5/5—108 (West 1996)).

Defendants moved for a new trial, arguing the jury reached its verdict by an impermissible quotient method. Defendants submitted three juror affidavits in support of their theory. Plaintiff moved to strike the affidavits on the ground that they revealed the process and methodology of jury deliberations. The trial court granted plaintiff's motion to strike and denied defendants' motion for a new trial.

Defendants have filed two notices of appeal, Nos. 1—02—3223 and 1—02—3604. The notices are identical with the exception that No. 1—02—3604 includes an appeal from the November 25, 2002, order granting in part plaintiff's petition for costs. The appeals have been consolidated. The consolidated brief filed by defendants does not challenge the November 25, 2002, order. The arguments raised by defendants include whether: (1) the trial court abused its discretion in excluding the videotape; (2) the trial court erred in striking the juror affidavits and denying defendants' motion for a new trial; and (3) the verdict was excessive and based on passion and prejudice, requiring remittitur or a new trial on damages.

■ We first look at the trial court's exclusion of the videotape evidence. Admission of a videotape into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of

discretion. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 284, 786 N.E.2d 139 (2003).

Defendants argue excluding the videotape was an improper sanction for a discovery rule violation under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)). But as plaintiff points out, there is nothing in the record to suggest that the trial court's decision to exclude the videotape was punitive in nature or made in reliance on Rule 219(c). Rather, the record shows the trial court relied on its belief that the videotape presented a foundational hurdle that defendants could not overcome.

A videotape recording may be introduced as demonstrative evidence if it is properly authenticated and relevant to a particular issue in the case. *Cryns*, 203 Ill. 2d at 283. To establish authenticity, a foundation must be laid by someone having personal knowledge of the filmed object. *Cryns*, 203 Ill. 2d at 283-84. The foundation may be established through testimony of a competent witness who has sufficient knowledge to testify that the videotape accurately represents what it purports to show. *Cryns*, 203 Ill. 2d at 284.

Plaintiff argues the trial court correctly excluded the videotape because defendants did not offer foundation evidence from the cameraman. We disagree. The cameraman is not necessary where a foundation can be laid by another competent witness who has sufficient knowledge to testify that the videotape fully represents what it purports to show. *People ex rel. Sherman v. Cryns*, 327 Ill. App. 3d 753, 760, 763 N.E.2d 904 (2002), *aff'd*, 203 Ill. 2d 264 (2003); *Missouri Portland Cement Co. v. United Cement, Lime, Gypsum & Allied Workers International Union, Division of Boilermakers, AFL-CIO, Local No. 438*, 145 Ill. App. 3d 1023, 1027, 496 N.E.2d 489 (1986). Because plaintiff was shown in the videotape doing the various tasks alleged, he qualifies as a competent witness with sufficient knowledge to testify that the videotape fully represents what it purports to show. We also note that plaintiff's wife, nephew and niece, who were also in the film, could provide competent foundational testimony sufficient for admission of the videotape into evidence.

We believe, however, that the videotape was properly excluded on relevance grounds. See *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1005, 785 N.E.2d 507 (2003) (reviewing court may affirm trial court order admitting or excluding evidence on any ground that appears in the record). A videotape is relevant as long as its probative value is not substantially outweighed by the danger of unfair prejudice. *Cryns*, 203 Ill. 2d at 284. While the videotape here is probative to show the extent of plaintiff's incapacitation and to rebut plaintiff's testimony that he experienced constant pain (see *Carney v. Smith*, 240

Ill. App. 3d 650, 656, 608 N.E.2d 379 (1992)), the danger of unfair prejudice to plaintiff outweighs the probative value because the videotape was edited. It showed only those short periods of time when plaintiff was actively participating in yard work. The recording stops when plaintiff goes inside his house or leaves the cameraman's range of sight, and gives the impression that plaintiff's activity is constant. Without an unedited span of footage, the jury could be left with the impression that plaintiff can sustain labor-intensive activities over a period of time without rest or without experiencing pain. We conclude it was not an abuse of discretion to exclude the videotape under these circumstances.

■ We next consider whether the trial court improperly struck juror affidavits in support of defendants' assertion that the jury reached its verdict through an impermissible quotient process. Because the sufficiency of the affidavits can be decided as a matter of law, we review the trial court order *de novo*. See *Zebra Technologies Corp. v. Topinka*, 344 Ill. App. 3d 474, 480, 799 N.E.2d 725 (2003) (pure questions of law are reviewed *de novo*, whereas circuit court's findings of fact are entitled to deference); see also *Jackson v. Graham*, 323 Ill. App. 3d 766, 773, 753 N.E.2d 525 (2001) (ruling on motion to strike affidavit submitted in support of motion for summary judgment is reviewed *de novo*).

In 1871, our supreme court held quotient verdicts to be an impermissible method by which a jury may reach its verdict. *Illinois Central R.R. Co. v. Able*, 59 Ill. 131 (1871). The juror affidavit in *Able* outlined the method the jury used to decide damages. *Able*, 59 Ill. at 133. Each juror wrote an amount of damages he believed the plaintiff was entitled to receive on a piece of paper. *Able*, 59 Ill. at 133. The numbers were then added and the sum divided by the number of jurors to yield a quotient that became the verdict. *Able*, 59 Ill. at 133. The court held that, while jurors may resort to such a process for experimentation purposes, an advance agreement to be bound by the result will invalidate the verdict. *Able*, 59 Ill. at 133-34.

The rule announced in *Able* surfaced more recently in *Department of Transportation v. Graham*, 130 Ill. App. 3d 589, 474 N.E.2d 810 (1985), on which defendants rely. The defendant in *Graham* moved for a new trial based on the defendant's own affidavit in which he said he was told by three jurors that the jury reached its verdict by averaging a cumulative damage award and comparing the average to the damages alleged by each party. *Graham*, 130 Ill. App. 3d at 591. The jury then rendered its verdict for the party whose estimate of damages was closest to the juror average. *Graham*, 130 Ill. App. 3d at 591. The defendant also submitted an affidavit by a juror who described the

process of reaching the verdict as averaging the awards reached by each juror, discussing the averages and reaching an agreed verdict. *Graham*, 130 Ill. App. 3d at 592. The defendant's motion for a new trial based on these affidavits was denied, and he appealed. *Graham*, 130 Ill. App. 3d at 592. Citing *Able*, the appellate court remanded the case for an evidentiary hearing to decide whether the jury verdict was reached through an improper quotient method. *Graham*, 130 Ill. App. 3d at 594. The court rejected the argument that the affidavits constituted an improper attempt to impeach the jury verdict. *Graham*, 130 Ill. App. 3d at 593, citing *People v. Holmes*, 69 Ill. 2d 507, 372 N.E.2d 656 (1978); *Heaver v. Ward*, 68 Ill. App. 3d 236, 240, 386 N.E.2d 134 (1979).

Our research has not uncovered Illinois precedent outside *Able* and *Graham* that would support consideration of juror affidavits to decide whether the jury arrived at a quotient verdict through the deliberative process. While other appellate courts have recognized the impermissibility of quotient verdicts, none have held that a quotient verdict is subject to collateral attack through juror affidavits describing the method by which the jury reached a verdict. See *Urbas v. Saintco, Inc.*, 264 Ill. App. 3d 111, 636 N.E.2d 1214 (1994); *Statler v. Catalano*, 167 Ill. App. 3d 397, 521 N.E.2d 565 (1988); *Singh v. Air Illinois, Inc.*, 165 Ill. App. 3d 923, 520 N.E.2d 852 (1988); *German v. Illinois Power Co.*, 115 Ill. App. 3d 977, 451 N.E.2d 903 (1983); *Kelley v. Call*, 324 Ill. App. 143, 57 N.E.2d 501 (1944); *Winn v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 143 Ill. App. 71 (1908); *John Spry Lumber Co. v. Duggan*, 80 Ill. App. 394 (1899).

*Holmes* and *Heaver*, relied on by *Graham*, support an opposite conclusion. While neither case concerned quotient verdicts, both dealt with juror affidavits offered to impeach verdicts. *Holmes* distinguished juror testimony concerning the motive, method or process by which a jury reaches its verdict and testimony concerning conditions or events brought to the jury's attention. *Holmes*, 69 Ill. 2d at 511-12. The court held the former category of testimony is inadmissible to impeach a jury verdict. *Holmes*, 69 Ill. 2d at 512-16. Because the affidavits in *Holmes* were offered to show extraneous information improperly brought to the jury's attention and not the method by which the jury reached its verdict, the court found the affidavits could be used to impeach the verdict. *Holmes*, 69 Ill. 2d at 516. See also *Heaver*, 68 Ill. App. 3d at 240-41 (relying on *Holmes* to admit juror affidavits showing that jurors considered evidence outside of the trial during its deliberations).

Our supreme court continues to hold that juror affidavits showing the motive, method or process by which a jury reaches its verdict can-

not be used to impeach the verdict. See *People v. Williams*, 209 Ill. 2d 227, 807 N.E.2d 448 (2004); *People v. Pitsonbarger*, 205 Ill. 2d 444, 793 N.E.2d 609 (2002); *People v. Hobley*, 182 Ill. 2d 404, 457, 696 N.E.2d 313 (1998). The court has said:

> " ' "[If it is] established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication [then] all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." ' " *Hobley*, 182 Ill. 2d at 457, quoting *Tanner v. United States*, 483 U.S. 107, 119-20, 97 L. Ed. 2d 90, 105-06, 107 S. Ct. 2739, 2747 (1987), quoting *McDonald v. Pless*, 238 U.S. 264, 267-68, 59 L. Ed. 1300, 1302, 35 S. Ct. 783, 784 (1915).

See also *Williams*, 209 Ill. 2d at 239; *Pitsonbarger*, 205 Ill. 2d at 468. Under this policy, juror affidavits will not be considered to impeach a verdict unless they are offered to show "improper extraneous influences" on the jury. *Hobley*, 182 Ill. 2d at 457-58. In light of these more recent supreme court cases, our inquiry is whether the affidavits here were offered to show the motive, method or process by which the jury reached its verdict or whether they show improper extraneous influences.

*Hobley* illustrates the difference between inquiries into the deliberative process and extraneous influences on the jury. The court in *Hobley* found the defendant was entitled to an evidentiary hearing on his claim that some of the jurors were subjected to intimidation by nonjurors during their deliberation. *Hobley*, 182 Ill. 2d at 458-59. The alleged intimidation happened as the jurors were dining in a hotel restaurant and were confronted by patrons of the restaurant who shouted that the defendant was guilty and should be executed. *Hobley*, 182 Ill. 2d at 459. The court reasoned the incident was a prejudicial outside influence on the jury and juror testimony about it could be used to attack the verdict. *Hobley*, 182 Ill. 2d at 459. But the court rejected the defendant's second argument that alleged intimidation by the jury foreman was an improper extraneous influence on the other jurors. *Hobley*, 182 Ill. 2d at 463. The defendant alleged the foreperson told other jurors he was a police officer, showed the jurors his gun and persuaded some of the jurors to find the defendant guilty. *Hobley*, 182 Ill. 2d at 463. The court held the defendant's argument addressed the

motive, method or process by which the jury reached its verdict and could not be used to impeach the verdict. *Hobley*, 182 Ill. 2d at 463.

It is clear the affidavits in this case also relate to the motive, method or process by which the jury reached its verdict. Each affidavit describes what took place as the jurors deliberated with no one else present. The affidavit by Kelly Sternes read:

> "We the jurors could not agree on the amount of the verdict. The numbers were all over the place. We could not reach an agreement on the awards for pain and suffering, disability[ ] and disfigurement. We then reached an agreement that each would write a number on a piece of paper, that the numbers would be averaged and divided by the number of jurors which was twelve, and that we would be bound by and accept the average for the verdict. There were no deliberations after we calculated the averages for each of these awards."

Theresa Lucas said in her affidavit:

> "We the jurors agreed on the amount of the verdict basing monetary awards for pain and suffering, disability[ ] and disfigurement on an average of each juror's estimate. We then reached an agreement that each would write a number on a piece of paper, that the numbers would be averaged and divided by the number of jurors which was twelve. After reading aloud the average for each award, we agreed to use those dollar amounts to calculate the total verdict. We did not deliberate any further."

The last affidavit, by Victoria Krimm, reads:

> "We the jurors could not agree on the amount of the verdict. There was no consensus on the numbers in the room. We could not reach an agreement on the awards for pain and suffering, disability[ ] and disfigurement. We then reached an agreement that each would write a number on a piece of paper, that the numbers would be averaged and divided by the number of jurors which was twelve, and that we would be bound by and accept the average for the verdict. There were no deliberations after we calculated the averages for each of these awards."

There is no showing of extraneous influences that would support a collateral attack on the verdict. While the affidavits unquestionably describe a quotient verdict, they amount to the kind of evidence barred by the holding in *Hobley*.

We believe that, under current supreme court cases, juror affidavits cannot be used to impeach a jury verdict on the ground that it was reached through an impermissible quotient method unless it can be shown that the decision to employ it was the result of extraneous influences. The affidavits in this case were properly stricken.

■ Defendants' final argument concerns whether the jury verdict

was excessive. Defendants contend the jury was incited by passion and prejudice through plaintiff's closing argument and the trial court's exclusion of the videotape into evidence. Defendants request a new trial on damages or, in the alternative, a remittitur of $1,994,008 in the amount awarded plaintiff and $99,500 in the amount awarded plaintiff's wife. We will not reverse the jury award unless it falls outside the range of fair and reasonable compensation, appears to be the result of passion or prejudice or is so large that it shocks the judicial conscience. See *Epping v. Commonwealth Edison Co.*, 315 Ill. App. 3d 1069, 1072, 734 N.E.2d 916 (2000).

Defendants cite two alleged trial errors as evidence that the jury was influenced by passion and prejudice. The first—exclusion of the videotape into evidence—did not constitute error. As discussed earlier, we believe the probative value of the videotape was outweighed by the potential prejudice to plaintiff. Defendants' second contention of error concerns the following remarks by plaintiff during closing argument:

> "But the defendant wants you to apparently be sympathetic to Mr. Trieb because he's a grandpa. I'm offended. I think it's offensive to even have brought that out.
>
> * * *
>
> The defense got up and made arguments in front of all of you and it was absolutely offensive. What they said to you was offensive.
>
> The defendant said to you, use the evidence. How ironic that the defendants in this case would say to you, use the evidence, when there is no evidence in this case that supports [their] position.
>
> The defendants [want] you not to follow the evidence. The defendants want you not to follow the law.
>
> ***
>
> *** The defense is saying to you, pay no attention to the evidence, pay no attention to the law. Only listen to my unsupported arguments.
>
> * * *
>
> It's funny that [Trieb] doesn't mention in here wood bracing. It's funny that [Trieb] doesn't mention in this accident report a pallet. It's funny that [Trieb] doesn't mention cellophane wrap on the day of the accident before the lawyers got involved—
>
> * * *
>
> This is what Mr. Trieb said before the lawyers got involved.
>
> * * *
>
> *** And it's offensive that the defense would have said to you those things. It is absolutely offensive. And I apologize for getting angry. I can't believe the defense did that.

* * *

Counsel says to you, ignore the facts. Ignore the evidence. Ignore the law. Give him less than five percent of what he asks for. Give him less than $500,000. It's offensive. You should be offended by that argument."

Defendants have not cited authority in support of their argument that these comments were improper, thereby waiving such argument. See *In re G.O.*, 191 Ill. 2d 37, 46, 727 N.E.2d 1003 (2000).

Defendants next argue the verdict is excessive when compared to verdicts reached in similar cases. Illinois courts have declined to make such comparisons, recognizing there is no mathematical formula for deciding whether an award is fair and reasonable. *Epping*, 315 Ill. App. 3d at 1072. "[A] damages award for a personal injury 'must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury and the judgment of the trial court.' " *Epping*, 315 Ill. App. 3d at 1073, quoting *Kopczick v. Hobart Corp.*, 308 Ill. App. 3d 967, 979, 721 N.E.2d 769 (1999). Factors that may be considered include: (1) the extent and permanency of the injury; (2) the possibility of future deterioration; (3) medical expenses; and (4) restrictions placed on the plaintiff as a result of the injury. *Epping*, 315 Ill. App. 3d at 1072.

Defendants argue the noneconomic damages award of $2,244,500 "makes no sense" when compared to jury awards in other cases. We rejected a similar argument in *Epping*. The defendant there sought to vacate a $9 million noneconomic jury award. *Epping*, 315 Ill. App. 3d at 1072. We declined to compare the award to other cases, saying:

"[J]urors, when considering damages, 'use their combined wisdom and experience to reach fair and reasonable judgments. We are neither trained nor equipped to second-guess those judgments about the pain and suffering and familial losses incurred by other human beings. To pretend otherwise would be sheer hubris.' " *Epping*, 315 Ill. App. 3d at 1073, quoting *Barry v. Owens-Corning Fiberglas Corp.*, 282 Ill. App. 3d 199, 207, 668 N.E.2d 8 (1996).

We also decline to compare the jury award entered here to jury awards in other cases. Instead, we review the record to ensure that the award falls within the range of fair and reasonable compensation, does not appear to be the result of passion or prejudice, nor is so large that it shocks the judicial conscience. See *Epping*, 315 Ill. App. 3d at 1072. The evidence at trial showed defendant continued to suffer pain in his knee despite three surgeries, required a cane to walk, was restricted to light-duty work and would continue to experience swelling that required plaintiff to wear compression hose. We cannot say that, in light of this evidence, the jury award was the product of passion or prejudice. Nor does it shock the judicial conscience.

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concur.